**TEXAS EMPLOYERS' INS. ASS'N v. MORENO. (No. 528–4210.)**

(Commission of Appeals of Texas, Section B. Nov. 4, 1925.)

**1. Appeal and error ⬅1011(1), 1095—Finding of fact of district court and Court of Civil Appeals on conflicting testimony is binding on Supreme Court.**

Where district court and Court of Civil Appeals entertain same view of conflicting testimony, and make same finding of fact, their conclusion is binding upon Supreme Court if there be any evidence to sustain such finding.

**2. Appeal and error ⬅1094(2)—Supreme Court cannot overrule jury's finding when there is any evidence to sustain their conclusion; jury's province is to pass upon the facts.**

Jury's province is to pass upon the facts, and Supreme Court cannot overrule their finding when there is any evidence to sustain their conclusion; it being for Court of Civil Appeals alone to do so, when jury's findings are contrary to weight of evidence.

**3. Master and servant ⬅385(1)—Compensation during disability purpose of statute.**

Main purpose of employers' liability acts is to compensate a man while unable to work, as manifested by Employers' Liability Act, pt. 1, §§ 10–12, as amended by Acts 35th Leg. (1917) c. 103, pt. 1, §§ 10–12 (Vernon's Ann.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Civ. St. Supp. 1918, arts. 5246–18, 5246–19, 5246–21).

**4. Master and servant ⬤⟹387—Allowance of compensation for total incapacity held not to preclude allowance for partial incapacity from loss of usefulness of arm.**

Allowance of compensation under Employers' Liability Act, § 10 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246ll), providing compensation for total disability, resulting from injuries not specified in section 12 (article 5246mm) providing compensation for specific injuries, *held* not to preclude an allowance under latter section for partial incapacity due to partial loss of usefulness of the arm; latter section containing no provisions that recovery thereunder should be "in lieu of" any other recovery.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Bartelo Moreno against the Texas Employers' Insurance Association. Judgment for plaintiff was reformed and affirmed in 260 S. W. 283, and defendant brings error. Affirmed.

Eskridge & Williams, of San Antonio, and Black & Morrow and Chas. L. Black, all of Austin, for plaintiff in error.

Samuel Belden, Perry J. Lewis, H. C. Carter, Champe G. Carter, and Randolph L. Carter, all of San Antonio, for defendant in error.

POWELL, P. J. Moreno was injured in falling from a scaffold where he was at work. He presented his claim to the Industrial Accident Board of Texas. Being dissatisfied with its award, he filed suit in the district court of Bexar county to set it aside and recover adequate judgment. The nature of his injuries was pleaded as follows:

"Suffering a fracture at junction of middle and outer third of left clavicle; said fracture is overlapping, and affects the movement of his arm and left shoulder, and also has affected his respiratory organs, and causes him to be weakened, and has affected his nervous system."

By reason of these injuries the prayer was for total and partial incapacity in the aggregate sum of $3,460.

The case was submitted to the jury upon special issues, and the jury found, among other things, the following: That, "as a result of the injuries shown to have been sustained by him," Moreno was totally unable to work for 200 weeks; that he did not suffer the permanent total loss of the use of his left arm, but that he did suffer permanent 50 per cent. disability in the use thereof.

It was agreed that 60 per cent. of Moreno's average weekly wage was $8.65.

The district court awarded Moreno a judgment for the lump sum value of 200 weeks at $8.65 per week, and a like value of 200 weeks at $4.32 per week. The first part of

the judgment was for the time he was totally incapacitated for work, and the latter for the time he was partially incapacitated in the use of one arm.

Upon appeal, the Court of Civil Appeals decided the awarding of a lump sum was erroneous. So that court reformed the judgment of the district court, and provided that Moreno should recover "compensation for 200 weeks from June 10, 1922, at the rate of $8.65 per week, and for 200 weeks thereafter at the rate of $4.32 per week." See 260 S. W. 283. Against this change in the judgment made by the Court of Civil Appeals counsel for Moreno did not complain.

[1, 2] The insurance association applied for a writ of error, and obtained it largely upon the statement that the sole basis for the verdict of the jury was an injury to the left arm of Moreno; that the Court of Civil Appeals had allowed a larger recovery for a partial injury to an arm than the employee could have recovered for the complete loss of that member. We think counsel, in making this statement, has failed to correctly interpret the statement of facts. As we read the record, the case was pleaded and tried upon an entirely different theory. Injuries, other than to the arm, were alleged. And from evidence that other injuries were sustained by Moreno the jury did not find that he suffered total incapacity from an injury to the arm alone, but from the injuries shown to have been sustained. There was no effort on the part of counsel for the insurance company to submit an issue to the jury asking them to determine whether or not, but for the injury to the arm, there would have been any total incapacity to work. Counsel for the company did make the contention in the trial court that no injury was shown except to the arm, and asked that the jury be so charged. The district court overruled that contention. The Court of Civil Appeals has done the same thing. As already stated, there was some evidence to sustain the jury's findings and the judgment of the lower courts. Where the district court and the Court of Civil Appeals entertain the same view of conflicting testimony, and make the same finding of fact, their conclusion is binding upon this court, if there be any evidence in the record to sustain such finding. It is not that the judges of the Supreme Court or Commission would or would not have found the facts as the jury and lower courts did. That is not the test. It is the province of the jury to pass upon the facts, and the Supreme Court cannot overrule their finding when there is any evidence to sustain their conclusions. The Court of Civil Appeals alone can overrule the findings of the jury because contrary to the weight of the evidence.

Consequently, we must construe the statutes involved, not upon the facts as present-

ed by counsel in the application, but upon the facts found by the lower courts. Under those facts, properly construing the applicable statutes, was there any excessive allowance by the lower courts?

The first Employers' Liability Act in Texas was passed in 1913. Under that act, we have the following provisions:

"Section 10. While the incapacity for work resulting from the injury is total, the association shall pay the injured employee a compensation equal to 60 per cent. of his average weekly wages but not more than $15, nor less than $5.00 a week, and in no case shall the period covered by such compensation be greater than four hundred weeks.

"Section 11. While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to 60 per cent. of the difference between his average weekly wages before the injury and the average weekly wages he is able to earn thereafter, but in no case to be more than $15 a week; and the period covered by such compensation to be in no case greater than three hundred weeks.

"Section 12. In case of the following specified injuries the amounts hereinafter named shall be paid by the association in addition to all other compensation:   (a) For the loss by severance of both hands at or above the wrist, or of both feet at or above the ankle, or the loss of one hand and one foot, or the reduction to one-tenth of the normal vision in both eyes, 60 per cent. of the average weekly wages of the injured employee, but not more than fifteen dollars nor less than five dollars a week for a period of one hundred weeks.   (b) For the loss by severance of either hand at or above the wrist, or either foot above the ankle, or the reduction to one-tenth of normal vision in either eye, 60 per cent. of the average weekly wages of the injured employee, but not more than $15 nor less than $5 a week, for a period of fifty weeks.   (c) For the loss by severance at or above the second joint of two or more fingers, including thumbs and toes, 60 per cent. of the average weekly wages of the injured employee, but not more than $15.00 nor less than $5.00 a week, for a period of twenty-five weeks.   (d) For the loss by severance of at least one joint of a finger, thumb or toe, 60 per cent. of the average weekly wages of the injured employee, but not more than $15.00 nor less than $5.00 a week, for a period of twelve weeks." Acts 33d Leg. c. 179, pt. 1 (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246ll–5246mm).

The next action by the Legislature came in 1917 when aforesaid sections were amended so as to read as follows:

"Sec. 10. While the incapacity for work resulting from injury is total, the association shall pay the injured employee a weekly compensation equal to sixty per cent. of his average weekly wages, but not more than $15.00 nor less than $5.00, and in no case shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of the injury.

"Sec. 11. While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly

compensation equal to sixty per cent. of the difference between his average weekly wages before the injury and his average weekly wage-earning capacity during the existence of such partial incapacity, but in no case more than $15.00 per week; and the period covered by such compensation to be in no case greater than three hundred weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one (401) weeks from the date of the injury.

"Sec. 12. For the injuries enumerated in the following schedule the employee shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent. of the average weekly wages of such employee, but not less than $5.00 per week nor exceeding $15.00 per week, for the respective periods stated herein, to wit:

"For the loss of a thumb, 60 per cent. of the average weekly wages during sixty weeks.

"For the loss of a first finger, commonly called the index finger, sixty per cent. of the average weekly wages during forty five weeks.

"For the loss of a second finger 60 per cent. of the average weekly wages during 30 weeks.

"For the loss of a third finger 60 per cent. of the average weekly wages during 21 weeks.

"For the loss of a fourth finger, commonly known as the little finger, 60 per cent. of the average weekly wages during 15 weeks.

"The loss of a second or distal phalange of the thumb shall be considered to be equal to the loss of one-half of such thumb; the loss of more than one-half of such thumb shall be considered to be equal to the loss of the whole thumb.

"The loss of the third or distal phalange of any finger shall be considered to be equal to the loss of one-third of such finger.

"The loss of the middle or second phalange of any finger shall be considered to be equal to the loss of two-thirds of such finger.

"The loss of more than the middle or distal phalange of any finger shall be considered to be equal to the loss of the whole finger; provided, however, that in no case shall the amount received for the loss of a thumb and more than one finger on the same hand exceed the amount provided in this schedule for the loss of a hand.

"For the loss of the metacarpal bone (bone of palm) for the corresponding thumb, finger, or fingers above, add ten weeks to the number of weeks as above, subject to the limitation that in no case shall the amount received for the loss or injury to any one hand be more than for the loss of the hand.

"For ankylosis (total stiffness of) or contracture (due to sears or injuries) which makes the fingers useless, the same number of weeks shall apply to such finger or fingers or parts of fingers (not thumb) as given above.

"For the loss of a hand, 60 per cent of the average weekly wages during 150 weeks.

"For the loss of an arm at or above the elbow 60 per cent. of the average weekly wages during 200 weeks.

"For the loss of one of the toes, other than the great toe, 60 per cent. of the average weekly wages during 10 weeks.

"For the loss of the great toe, 60 per cent. of the average weekly wages during 30 weeks.

"The loss of more than two-thirds of any toe

shall be considered to be equal to the loss of the whole toe.

"The loss of less than two-thirds of any toe shall be considered to be equal to the loss of one-half of the toe.

"For the loss of a foot, 60 per cent. of the average weekly wages during 125 weeks.

"For the loss of a leg at or above the knee 60 per cent. of the average weekly wages during 200 weeks.

"For the total and permanent loss of the sight of one eye 60 per cent. of the average weekly wages during 100 weeks.

"In the foregoing enumerated cases of permanent, partial incapacity, it shall be considered that the permanent loss of the use of a member shall be equivalent to and draw the same compensation as the loss of that member.

"For the complete and permanent loss of the hearing in both ears 60 per cent. of the weekly wages during 150 weeks.

"For the loss of an eye and leg above the knee 60 per cent. of the average weekly wages during a period of 350 weeks.

"For the loss of an eye and an arm above the elbow 60 per cent. of the average weekly wages during a period of 350 weeks.

"For the loss of an eye and a hand 60 per cent of the average weekly wages during a period of 325 weeks.

"For the loss of an eye and a foot 60 per cent. of the average weekly wages during a period of 300 weeks.

"Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; but this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one . member, for which members compensation is provided in this schedule; compensation for specific injuries under this Act shall be cumulative as to time and not concurrent.

"In all cases of permanent, partial incapacity, it shall be considered that the permanent loss of the use of the member be equivalent to and draw the same compensation as the loss of that member; but the compensation in and by said schedule provided shall be in lieu of all other compensation in such cases.

"In all other cases, partial incapacity, including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employee, compensation shall be determined according to the percentage of incapacity, taking into account, among other things, any previous incapacity, the nature of the physical injury or disfigurement, the occupation of the injured employee and the age at the time of the injury; the compensation paid therefor shall be sixty per cent. of the average weekly wages of the employee, but not to exceed $15.00 per week, multiplied by the percentage of incapacity caused by the injury for such period as the board may determine not exceeding three hundred weeks. Whenever the weekly payments under this paragraph would be less than $3.00 per week, the period may be shortened, and the payments correspondingly increased by the board." Acts 35th Leg. c. 103, pt. 1 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5246—18, 5246—19, 5246—21).

The articles passed in 1917 were in effect when Moreno was injured. They are still in effect, except that in 1923 the Legislature increased the weekly maximum recovery from $15 to $20, and the minimum from $5 to $7.

It will be observed that in at least two respects the amendment of 1917 took away the rights of the employees. In the first place, under the act of 1913, an employee might recover for total incapacity for 400 weeks and for partial incapacity for an additional 300 weeks. Under the later act, recovery for both kinds of incapacity was limited to 401 weeks.

In the next place, under the act of 1913, section 12, an employee could recover, not only the amounts specified in sections 10 and 11, but, "in addition" thereto, definite amounts for certain specified injuries. But, under the act of 1917, if he accepted this definite compensation for certain specific injuries, he did so "in lieu of" other compensation.

It is true that this compensation for specific injuries was made larger under the act of 1917. For instance, under the act of 1913, a man was given 60 per cent. of weekly wages for 50 weeks for loss of a hand. Under the act of 1917 he recovered that definite amount for 150 weeks for the same loss.

There can be no question, from the very wording of the act, that a new system was inaugurated in 1917. The words were changed from "in addition to" to "in lieu of." It was evidently the intention of the Legislature to provide a definite recovery for certain specific injuries, regardless of whether the employee could work or not. This is made certain by section 12a of part 1 of the act of 1917, which reads as follows:

"Sec. 12a. If the injured employee refuses employment reasonably suited to his incapacity and physical condition, procured for him in the locality where injured or at a place agreeable to him, he shall not be entitled to compensation during the period of such refusal, unless in the opinion of the board such refusal is justifiable. This section shall not apply in cases of specific injuries for which a schedule is fixed by this act." Vernon's Ann. Civ. St. Supp. 1918, art. 5246—22.

Section 12 speaks of the specific injuries mentioned as cases of "permanent partial incapacity." And a reading of the injuries discloses that each of them involves only a partial incapacity. The loss of a limb is a permanent incapacity, but only a partial one. This section of the law allows an employee one-half as much for the loss of an arm as he could possibly recover for total inability to work for any other reason. The law says that the permanent loss of the use of a member shall be the same as if it was cut off. A man whose arm is permanently paralyzed would get the same compensation under section 12 as would one whose arm was cut off with a knife. But a careful reading of section 12 discloses that these specific recoveries

are limited either to the loss of a member or the permanent loss of its entire usefulness. There is nothing in section 12, prior to its last paragraph, allowing recovery for the temporary or permanent partial loss of the usefulness of an arm. At the very beginning of the section it is stated that for the injuries enumerated in the following schedule the recovery shall be in lieu of all other compensation. Then we have the same statement in the next to the last paragraph of section 12. That clause applies to all cases of loss of limb or permanent total loss of usefulness thereof.

But the last paragraph of this section, which was not found at all in the act of 1913, starts out with the statement that "in all other cases" of partial incapacity the recovery should be, etc. That clause does not provide that recovery of that kind shall be in lieu of all other compensation.

The words "in lieu of" were written into the law more than once. If it had been intended for such words to apply to the last paragraph of section 12, they doubtless would have been inserted one more time. This last paragraph shows that it covered "all other cases", where the schedule of section 12 did not apply. At the same time, the words "in lieu of" are expressly limited to the injuries in the schedule. We are unwilling to write into the last paragraph of this section a clause of this kind when the act clearly shows, not only by its express language, but by every reasonable implication, that the contrary was intended by the lawmakers. Under this last paragraph of section 12 the recovery might be for just a very few dollars. Certainly it could not have been intended that any such recovery should be in lieu of all other compensation.

[3] The main purpose of legislation of this kind is to compensate a man while unable to work. Sections 10 and 11 were written for that purpose. But certain injuries were so serious and their permanency so easily established that the lawmakers decided to allow definite recovery for those injuries, regardless of other circumstances. At the same time they clearly showed their intention not to permit that action to deprive an employee of his rights under sections 10 and 11. We refer, in this connection, to the following paragraph of section 12:

"Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; but this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member, for which members compensation is provided in this schedule; compensation for specific injuries under this act shall be cumulative as to time and not concurrent."

Under this clause, if a person lost an arm in an accident, and was at the same time otherwise injured, but in a manner not scheduled in section 12, he could forego his compensation under section 12 for the loss of his arm and claim under other sections. For his arm he could get total incapacity compensation for 200 weeks, whereas he might get the same amount of compensation for 401 weeks due to some other injury. The law very wisely permits him to take under the clause which gives him the most compensation. Section 12 merely provided that a man could not recover for specific injuries therein enumerated and also under other sections of the law. In other words, the intention of the Legislature that there should be no double recovery is made manifest.

Of course, one can recover separately for the various injuries specified in section 12. But we are entirely confident that, if Moreno had recovered $8.65 per week for 200 weeks for the loss of his arm or the permanent entire usefulness thereof, such recovery would have been in full of his rights. He could not then recover for another 200 weeks for the loss of 50 per cent. of its usefulness. The statute clearly states this. His recovery of $8.65 for 200 weeks for his arm is in lieu of everything else. Counsel is doubtless correct in stating that the law would not permit a recovery of more for the partial loss of usefulness of an arm than it would for an arm that was cut off. If a man take full recovery for the loss of an arm, he would not then be entitled to also recover for the partial loss of that member.

But we have no such case. We have a judgment under section 10 for 200 weeks because of total inability to work, due to other injuries. Then we have also a recovery for 200 weeks under the last paragraph of section 12 for partial loss of usefulness of the arm. Under the verdict of the jury, this latter recovery could have been for 300 weeks instead of 200 weeks. But the court evidently limited it to 200 weeks, so that the entire recovery for both kinds of incapacity would not be more than 401 weeks, as provided at the end of section 11.

We think this recovery proper and within the statute. There has been no effort here to recover for partial incapacity for work under section 11. It is not necessary for us to decide whether or not one could recover under that section and also for partial incapacity under the last paragraph of section 12. But, we think, they could not. We believe the latter section refers to partial loss of usefulness of the members of the body referred to in section 12, and that with reference to such partial incapacity, including disfigurement of such members, it takes the place of section 11, which refers to partial incapacity from general causes.

As we have indicated, it was not the intention of the statute to allow double recovery for the same injury in any event. But we find nothing in the law to indicate that

the· Legislature intended to deprive an employee of the benefit of section 11 or the last paragraph of section 12 just because the partial incapacity was due to partial loss of usefulness of the arm, when his only other recovery was under section 10 and for injuries other than those specified in section 12.

[4] The only question necessary for us to decide is whether or not the recovery in this case, based in part upon section 10, resulting from injuries not specified in section 12, precludes recovery under the last paragraph of section 12 for partial incapacity due to partial loss of usefulness· of the arm. We think it does not. That one point we do decide. The other things we have said were stated in the view of assisting in the determination of this one issue. It seems necessary to discuss the entire statute to get the intention of the Legislature clearly before us. We find no case holding contrary to our view. The Court of Civil Appeals at Beaumont agrees with us in the case of Millers' Indemnity Underwriters v. Cahal, 257 S. W. 957. Cahal recovered under section 10 as well as under the last paragraph of section 12. It seems there was no application for writ of error in the Cahal Case.·

It should also be said that the Industrial Accident Board has never ruled contrary to the views we have expressed herein. The award of the board in the case at bar was for a recovery for total incapacity for a definite period of 26 weeks. The board seemed to think he would recover in that time. They did not say anything which shows that they construe the law differently from our own views; nor have we heard of any other decision by the board contrary to our views.

As we have already shown, section 12 contains no provision even tending to show that recovery under the last paragraph thereof should be "in lieu of" any other recovery. Under our construction of this act, no double recovery is anywhere allowed. Recovery for total inability to work due to injuries not specified in section 12 is allowed under section 10 and recovery is also allowed for subsequent partial incapacity to labor because of 50 per cent. loss in usefulness of an arm under the last paragraph of section 12. There· is no recovery for injuries specified in the enumeration in section 12 for which specific recovery is given by law. His arm was not severed, and the evidence did not show a loss of its entire usefulness. Hence no recovery here could be in lieu of any other recovery decreed by the courts.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.