**SECURITY UNION CASUALTY CO. v. FREDERICK. (No. 545.)**

Court of Civil Appeals of Texas. Beaumont. May 7, 1927.

Rehearing Denied June 15, 1927.

1. **Master and servant &#9756;417(4½)—Court had jurisdiction of appeal from award of Industrial Accident Board, notwithstanding alleged date of injury and date stated in award differed.**

Where plaintiff, in suit in the nature of an appeal from award of Industrial Accident Board, alleged injuries were sustained on or about December 31, 1925, district court will be held to have had jurisdiction, though award was for an injury as of date January 6, 1926, where proof showed beyond controversy that plaintiff suffered only one injury, and that facts of such injury were presented to Industrial Accident Board.

2. **Master and servant &#9756;417(5)—Date of injury is not ordinarily controlling on merits of appeal from Industrial Accident Board.**

Date of injury is not ordinarily controlling on merits of appeal from the Industrial Accident Board, since appellant fully meets his burden when he shows an injury that has been adjudicated by board and statutory appeal therefrom.

3. **Master and servant &#9756;405(6)—Evidence held to raise issue of employee's total permanent incapacity, because of traumatic neuritis resulting from injury.**

Evidence relative to injured employee suffering from traumatic neuritis due to injury to specific member held sufficient to raise issue of total permanent incapacity.

4. **Trial &#9756;350(1)—Each party has right to affirmative submission of issues made by pleadings and supported by evidence.**

Each party to a suit has the right to have an affirmative submission of all issues made by his pleadings and supported by his evidence, and denial of such right constitutes reversible error.

5. **Trial &#9756;350(3)—Refusal of special issue as to employee's incapacity relating alone to leg held not erroneous under evidence.**

In suit in the nature of an appeal from award of Industrial Accident Board, refusal to submit special issues relative to whether incapacity related alone to leg *held* not erroneous, in view of evidence establishing that incapacity, if any, resulting from injury, was not limited to leg, but affected entire body, because of traumatic neuritis resulting from injury to leg.

6. **Evidence &#9756;127(1)—Testimony by wife of injured employee relative to his statement as to nature of pain suffered held admissible as res gestæ.**

In suit in the nature of an appeal from an award of the Industrial Accident Board, testimony of employee's wife relative to his statement as to nature of pain suffered *held* admissible as res gestæ, since it is unnecessary that expressions of pain be of original injury, but is sufficient if they be of existing pain and bodily suffering, constituting an expression of present suffering from injury made basis of cause of action.

Appeal from District Court, Orange County; V. H. Stark, Judge.

Suit by T. J. Frederick against the Security Union Casualty Company, in the nature of an appeal from an award of the Industrial Accident Board. Judgment for plaintiff, and defendant appeals. Affirmed.

H. F. Montgomery, of Houston, and D. C. Bland, of Orange, for appellant.

Dies, Stephenson & Dies, of Orange, for appellee.

WALKER, J. This suit was instituted in the district court of Orange county by appellee against appellant, in the nature of an appeal from an award of the Industrial Accident Board, wherein he was awarded compensation at the rate of $16.37 per week, and his compensation period fixed at 37 weeks. On the trial of this case it was shown that appellee was injured while in the due course of his employment with the Republic Production Company, and that appellant was the insurer under the conditions of our Workmen's Compensation Act. Appellee alleged in his petition that he was permanently totally incapacitated, and prayed for a lump sum settlement. Appellant's answer was by general demurrer and general denial. On the verdict of the jury appellee was awarded compensation in a lump sum for a total permanent incapacity. The following conclusions dispose of the merits of this appeal:

---

&#9756;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

[1, 2] (1) The final award of the Industrial Accident Board, from which appellee duly prosecuted his appeal by this suit, awarded him compensation for an injury as of date January 6, 1926. By his pleading and testimony in this suit he prayed for and recovered judgment for an injury sustained by him "on or about the 31st day of December, 1925." Appellant contends that the cause of action involved in this appeal is different from the one adjudicated by the Industrial Accident Board, on the theory that the Industrial Accident Board's award was for an injury of date the 6th of January, 1926, while this suit involves an injury as of date December 31, 1925. The proposition is that the cause of action involved in this suit was never adjudicated by the board, and therefore the district court was without jurisdiction.

This proposition is without merit. The proof shows beyond controversy that appellee suffered only one injury; that the facts of that injury were presented to the Industrial Accident Board, and the facts of the same injury were presented to a jury in this case. Appellee's pleadings did not fix a certain date for his injury, but alleged that it occurred "on or about the 31st day of December, 1925," and his testimony was to the same effect. It was agreed by counsel upon the trial of this case that the Industrial Accident Board "made its final award" on the 6th day of October, 1926; that appellee "has appealed," and that he "filed this action to set aside the said award." It cannot be questioned on these facts that the district court had jurisdiction of the action pleaded, and that there was no variance between the pleadings and the evidence, and that no issue was raised against the conclusion that the accident involved in this appeal was the same one adjudicated by the Industrial Accident Board. Texas Employers' Insurance Co. v. Jimenez (Tex. Civ. App.) 267 S. W. 755. On this proposition it should also be said that the date of the injury is not ordinarily controlling on the merits of an appeal from the Industrial Accident Board. The appellant fully meets his burden when he shows an injury that has been adjudicated by the board and the statutory appeal from that adjudication.

[3] (2) Appellant contends that by the uncontradicted evidence appellee's injury was to a specific member, and that there was no evidence that the incapacity "would be permanent." Therefore it says "it was error to submit to the jury an issue of permanent total incapacity." While in the due course of his employment appellee was severely injured; his back was bruised, and his leg was severely injured below the knee. As a result of these injuries, it was contended by him that he was suffering from traumatic neuritis, totally and permanently incapacitating him for manual labor, which was all the work he was qualified to do. His injury occurred on or about December 31, 1925. He testified:

"I have not done any work of any character since December 31, 1925. I have not worked one day. I haven't been able to do any work, simply because the kind of work that I did do, I am not able to get out and stand up on my leg for any length of time; it swells up on me, and hurts me at nights, and I can't sleep. It hurts me in the knee, and down my leg, and up the side of my leg here (indicating); and I can be asleep at night, and like you would take a probe and stick in there, may be a pain will hit me, and I have to get up, and may be some nights it is 3 or 4 o'clock in the morning before I go to sleep. Those pains are getting worse, and have been getting worse since the date of the injury.

"I have been under the treatment of physicians since I was injured. I have not been relieved from those pains by any treatment I have had. I took treatments at the hospital— electric treatments. I suppose I took those for two months, or probably three months.

"I have attempted to do some work since the date of my injuries, but my leg hurt me so I couldn't work, and couldn't sleep at nights, and I didn't try to work any more.

"Yes; I stated a little while ago that I had eight children, a wife, mother, and grandmother. All of those people are dependent on me for support and livelihood. I have not got any property at the present time. I have no income or source of income at the present time.

"During the major portion of my life my work has been just manual labor, common manual labor. I am not prepared for any other sort of labor except that. I am not a well-educated man; just a fairly good education. * * *

"The pains that I suffer from are severe. I am unable to stand for any length of time and do any work whatever. This pain in my leg sometimes runs up to my hip, and then I have headaches occasionally caused from it. * * *

"Prior to December 31, 1925, I was in good physical condition and health. I was able to do any kind of manual labor, and had been doing it ever since I was large enough to do so. I have not got the full use of my leg now. To a certain extent I can bend it, but not with any ease. * * *

"Immediately after I received that blow my leg was all swollen up, and black from the knee on down underneath my foot, and on the instep. It was black all the way down. It remained in that condition possibly three months. Dr. Slay was treating it at the time, and later on Dr. Wilhite treated it. Dr. Wilhite was the company's physician. He gave me an electric treatment at the hospital. He did not give me any other sort of treatment besides that. After I received the injury, my leg was inflamed, as well as being swollen. At the present time it is sore, and stiff in the knee, and all down my leg is sore. * * *

"At the time of the accident—no, sir; it was not infected at that time. After that time it was; it was all swollen up. No; it wasn't infected that I know of; it was just swollen up."

Dr. Slay, appellee's attending physician, testified:

That he treated appellee twice every day for two weeks, and then occasionally for about two months; that he found bruises above his knee to his hip, and from his knee to his ankle, and on his back and shoulders, appellee complained "all the way through"; he does not complain at this time of his back, but "of his knee," of pains in his leg above the knee, and on examination of the knee he has a "click"; that is, his knee makes a noise in moving it, and "you can feel it without rubbing, like in bending his knee the surface of the joints slip over something more or less rough."

"I saw the X-ray plates at the hospital of Mr. Frederick's knee, and they do not, so far as I can see personally, show any fracture, but on the head of the femur, which is the large bone that runs from the hip to the knee, there is a small growth of bone, and also there seems to be some inflammatory condition within the knee joint.

"Neuritis is supposed to be an inflammation of a nerve fibre; that is, the nerve itself runs like a line, like a telegraph wire, through the body, to control the motions of the body, and this nerve becomes inflamed, sometimes from trauma, which is a bruise, sometimes from 'an infection or pus, and sometimes from a wasting of the tissues. That is what neuritis is supposed to be. The symptoms of neuritis are subjective. You have to rely upon the patient's statement as to whether or not he has pain."

Dr. Phillips testified:

"In all cases of neuritis the symptoms are subjective, and in ascertaining whether or not the patient has it we are dependent upon the truth of the statement made by the patient. * * * I have had occasion to examine Mr. Frederick. * * * I did not treat or examine him immediately after the injury. I think I examined him the latter part of August, 1926.

"Assuming that a patient was in good health, strong and robust, and that on or about December 31, 1925, he received a severe blow to his knee and leg, from the back-ups of a rotary, and that prior to receiving the injury he had never suffered any pain along his leg, but that after that time he suffered severe pains to such an extent that he was not able to sleep some nights, it would be probable that the neuritis he is suffering with was caused by the blow.

"Assuming that a patient is suffering from a severe case of traumatic neuritis, to such an extent that he is unable to sleep at nights, and suffers continually, and that such pains are increasing, his capacity to do manual labor would depend upon the extent to which he suffers. Assuming that he suffered severe pains, it would incapacitate him from doing manual labor. * * *

"Q. Assuming a patient is 38 years of age, and that he was injured by a severe blow, such as I have previously described to you, received on the knee of the left leg, and that this occurred about 10 or 11 months ago, and since that time the patient's pain and suffering has increased, and he has been treated by a number of physicians but has not improved, and he has received electric treatment and has gradually grown worse, state whether or not such traumatic neuritis would probably be permanent. A. It would be more apt to be; yes; it would look unfavorable. Traumatic neuritis is a common ailment or disease known to medical science."

Dr. Lawson, appellant's witness, testified:

"No; I do not undertake to tell the jury that Mr. Frederick is not suffering from neuritis. I cannot tell whether he has it or not. That is a matter depending upon the truth of his own statements. Neuritis symptoms are subjective.

"Q. In reference to where the pain traveled, isn't it a fact that in neuritis produced by an infection the pain usually travels above the site of the injury? * * * A. Yes, sir; in fact, of course, the pain might become more general. You might get what we call a multiple neuritis, that could be referred to most any part of the body. Yes; it is possible that infection would or could result from a severe blow to the knee.

"Q. Now, assuming that a man has a severe case of neuritis, to such an extent that, whenever he tries to use his leg or stand upon it, it gives him severe pain, and assuming that he cannot sleep well at night, what percentage of disability would he have? * * * A. Assuming those things, and that his leg becomes swollen when he stands upon it, I still don't know that I can estimate the percentage of his disability under those circumstances. No; I don't think a man would be able to work very much under those conditions."

A further quotation from the record would serve no useful purpose. Under the testimony of the medical experts, the nature of appellee's complaint could be diagnosed only upon his statement. If appellee was telling the truth, his trouble was neuritis, and the testimony of the experts, as quoted, those called both by appellee and appellant, raised the issue of permanent total incapacity. While not controlling, it was a circumstance for the jury that appellee, an honorable man, had done no work since his injury. All the testimony reviewed was sufficient to raise the issue of total permanent capacity. It was said in Fidelity, etc., Co. v. Joiner (Tex. Civ. App.) 178 S. W. 806, quoting the syllabus:

"The weight of expert testimony is for the jury, and their finding, based on conflicting medical testimony, will not be disturbed."

[4, 5] (3) We agree with appellant that each party to a suit has the right to have an affirmative submission of all issues made by his pleadings and supported by his evidence, and that a denial of that right constitutes reversible error. Enterprise Co. v. Glenn (Tex. Civ. App.) 290 S. W. 806. But under this proposition the trial court did not commit reversible error by refusing appellant's requested charge, as follows:

"If, in answer to special issue No. 5, you have stated that the injuries sustained by plaintiff have naturally resulted in incapacity, then state whether such incapacity relates alone to the left leg. Answer 'Yes' or 'No.'"

Appellee's incapacity, if any, resulting from his injury, did not relate to the leg alone; it was not a specific injury. It is true the leg was injured, but under the testimony

the incapacity was to the entire body. It was his contention that the pain resulting from the injury to the leg incapacitated him for work, and all the testimony was on that issue. Appellee was not a one-legged man, or a one-footed man, or with an injury impairing the leg or the foot, seeking employment and handicapped only by the loss of impairment of that specific member. The testimony raised the issue, and only that issue, that he was a sick man, his entire body incapacitated because of a disease resulting from the injury to the leg, but not confined to the leg. There was no testimony limiting the incapacity of the leg alone. If appellee was incapacitated; under all the testimony, it was because of traumatic neuritis. Under all the testimony, this disease was to the entire body, thereby incapacitating the entire body. Assuming the truthfulness of his statements, the expert witnesses differed as to the exent of the incapacity; but, as we understand their testimony, they agreed on the diagnosis. The issue submitted by this question was not raised by the evidence. Millers' Indemnity Underwriters v. Cahal (Tex. Civ. App.) 257 S. W. 957; Texas Employer's Insurance Association v. Moreno (Tex. Com. App.) 277 S. W. 84; Lumbermen's Reciprocal Association v. Anders (Tex. Civ. App.) 292 S. W. 265.

(4) The hypothetical questions asked the physicians by appellee "as to the extent of disability resulting from a certain technical disease" were in compliance with the rules. They embodied only the facts of appellee's case, and were upon issues duly plead. The percentage of his disability and its duration were the issues being tried, and the qualification of these learned doctors showed that they were competent to express their opinions on these issues. The objection of appellant seems to be that their "examination of plaintiff" had not disclosed any evidence of such disease, and there was "no competent evidence in the record of the existence of such disease." All the testimony was to the effect that a diagnosis of neuritis rested upon the statements of the patient; that is, in making such diagnosis, the doctors must assume the truthfulness of the patient's statements to them. This was made clear to the jury. They heard the testimony of the appellee. The facts of his testimony were submitted in the form of hypothetical questions to the doctors in this case, which was, as we have said, in conformity with the rules for such examination.

[6] (5) Mrs. Frederick, the wife of appellee, testified:

"I recall about the date that my husband received an injury to his leg. We were living at that time one mile south of Mauriceville. Prior to the time he was injured, my husband was in good health. He was a strong man before then. He has not been in good health since that time, and is not strong now. He has decreased in weight.

"Q. Mrs. Frederick, state to the jury whether or not your husband complains of his leg, or any pains suffered on account of the injury. * * * A. He does; yes, sir.

"Q. State the nature of the pains. A. Well, if he stands on it, he complains."

This testimony was objected to, on the ground that it was hearsay and did not come within the rules of "res gestæ." The objections were not well taken. To be admitted, the expressions of pain need not be res gestæ of the original injury; but it is sufficient if they be of existing pain and bodily suffering—that is, an expression of present suffering from the injury which the party makes the basis of his cause of action. Railway Co. v. Zwiener (Tex. Civ. App.) 38 S. W. 375; Railway Co. v. Norvell (Tex. Civ. App.) 115 S. W. 861; Railway Co. v. Bell, 24 Tex. Civ. App. 579; 58 S. W. 614; Railway Co. v. Coffman (Tex. Civ. App.) 160 S. W. 145; Texas Traction Co. v. Morrow (Tex. Civ. App.) 145 S. W. 1069; Lumbermen's Reciprocal Association v. Adcock (Tex. Civ. App.) 244 S. W. 645.

The judgment of the trial court is in all things affirmed.