**OILMEN'S RECIPROCAL ASS'N v. YOUNGBLOOD et al. (No. 1576.)**

Court of Civil Appeals of Texas. Beaumont.
July 14, 1927.

1. **Master and servant** ⬤⇒396—**Court had jurisdiction on change of venue by consent of parties to suit to set aside award instituted in county of injury (Rev. St. 1925, arts. 2169, 2170; Workmen's Compensation Act, pt. 2 [Rev. St. 1925, art. 8307] § 5).**

Where suit to set aside award of Industrial Accident Board under Workmen's Compensation Act was originally instituted in county where injury occurred, court of county to which venue was changed by written consent of parties had jurisdiction under Rev. St. 1925, arts. 2169, 2170, as article 8307, § 5, requiring institution of such suit in county where injury occurred, does not prevent change of venue.

2. **Master and servant** ⬤⇒394—**Trial procedure in suits under Workmen's Compensation Act, except as regulated by act, is identical with procedure in other civil cases (Rev. St. 1925, arts. 8306–8309).**

Where jurisdiction of district court is invoked in suit under Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309), trial procedure except as otherwise regulated by specific provisions of act is identical with that provided for other civil cases.

3. **Master and servant** ⬤⇒385(14)—**Award for permanent partial incapacity on injury to foot held proper under evidence indicating workman's general capacity was affected (Workmen's Compensation Act, pt. 1 [Rev. St. 1925, art. 8306] § 12).**

Award of compensation for permanent partial incapacity under Workmen's Compensation Act *held* proper in action to set aside award as against claim that injury to workman's foot was specific under Rev. St. 1925, art. 8306, § 12, where evidence indicated injury did not relate to injured member alone, but tended to incapacitate laborer from performance of customary duties.

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Master and servant ⬤⟹385(11)—Injury to particular ,member, which incapacitates laborer generally from performance of customary duties, is not "specific" (Workmen's Compensation Act, pt. 1 [Rev. St. 1925, art. 8306] § 12).**

Injury to particular member of body is not "specific" within meaning of Workmen's Compensation Act (Rev. St. 1925, art. 8306, § 12), where injury causes entire body to suffer, thus incapacitating laborer from performance of usual and customary duties.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Specific.]

Error from District Court, Jefferson County; Geo. C. O'Brien, Judge.

Suit by the Oilmen's Reciprocal Association against J. Youngblood and others to set aside an award of the Industrial Accident Board. Judgment for defendants, and plaintiff brings error. Affirmed.

King, Battaile & Sonfield, of Houston, for plaintiff in error.

Morris & Barnes, of Beaumont, for defendants in error.

WALKER, J. This suit was instituted in the district court of Hardin county, Tex., by appellant against appellees to set aside the award of the Industrial Accident Board in appellees' favor. After the suit was duly and legally instituted in Hardin county where appellee, Youngblood, was injured, the parties, by written agreement in full compliance with article 2169, Revised Statutes 1925, had this case transferred to the district court of Jefferson county, Tex., where it was tried on the agreed change of venue and judgment rendered in appellees' favor.

[1, 2] Appellant's first point is that the district court of Jefferson county was without jurisdiction, that the district court of Hardin county alone had jurisdiction to try this case, and the parties were without authority to. change the venue to the district court of Jefferson county; that the district court of Hardin county was without jurisdiction even on the agreement of the parties to transfer the case to the district court of Jefferson county; that the judgment of the district court of Jefferson county was absolutely void and of no effect since it had jurisdiction neither of the subject-matter nor of the parties. As supporting this proposition, appellant cites articles 2169 and 8307, § 5, Revised Statutes 1925; Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084; Oilmen's Reciprocal Association v. Franklin (Tex. Com. App.) 286 S. W. 195. These authorities go only to the extent of holding that the suit must be instituted "in the county where the injury occurred." In instituting the suit in Hardin county where the injury occurred, the law as announced by these authorities was fully complied with. Neither the cited article, 8307,

§ 5, nor the cited authorities, undertake to regulate the trial of the case after its institution. The trial procedure of a case under the Workmen's Compensation Act, except where regulated by specific provisions of the act, is as in other civil cases. Article 2169, cited, supra, provides that the parties may by "written consent" change the venue. Article 2170 provides that the venue may be changed when it is made to appear:

"1. That there exists in the county where the suit is pending so great a prejudice against him that he cannot obtain a fair and impartial trial.

"2. That there is a combination against him instigated by influential persons, by reason of which he cannot expect a fair and impartial trial.

"3. For other sufficient cause, to be determined by the court. Acts 1874, p. 67; P. D. 5885a; G. L. vol. 8, p. 69."

In order to insure justice, it might be necessary for the parties litigant to invoke one or more of the provisions of these cited articles, and there is nothing in the Workmen's Compensation Act depriving them of the benefits of these articles. When the jurisdiction of the district court where the injury occurred has been duly and lawfully invoked in a Workmen's Compensation case, it is our conclusion that the court and the litigants may dispose of the issues involved by orderly process of trial as in other civil cases; and there is nothing in the Workmen's Compensation Act limiting their rights in this respect.

[3] As we understand appellant's other point, the contention is made that the injury to appellee, Youngblood, was to the foot alone, and hence his compensation should be based on the provision of article 8306, Revised Statutes 1925, § 12, and that the court erred in awarding compensation for permanent partial incapacity. Appellee's injury was to the foot and resulted in the loss of half of his big toe and all of the next toe. In addition to these specific injuries, the bones in his foot were crushed, and the arch of his foot was broken.

Dr. Ledbetter, an X-ray specialist, testified:

"I have had occasion to make an examination of this young man's foot. It was in April and May, I believe, 1925. When I first examined him, he had recently had an injury—I think the day before—to his left foot. * * * When I examined him last, the third toe had crossed over and was overriding the big toe. When a man who labors to earn his living, and that is the only livelihood he has, and he suffered such an injury as I have pictured to the jury, I would say that would be a serious injury to his earning a livelihood in the future; it depends on his occupation, of course. With a laboring man the injury would be greater than an office man. In the case of a man who earns his living by labor, I think the percentage of disability would be from 50 to 60 per cent. I

---

don't think there will ever be any marked improvement in that condition. I doubt if surgery could aid him very much, if any."

And, on cross-examination, that:

"Whether an arch support would aid him in removing some of the discomfitures would depend on whether the arch would press on the callous; if there is much callous in there an arch might be painful. Callous is the formation formed by nature repairing a bone. * * * A callous formation is readily discernible in an X-ray picture. On the X-ray picture of his foot, there appears a callous forming around the fracture of the great toe metatarsal, what we call the bridge bone, right here (indicating). In other words, the callous is this shadowy-like thing there on the metatarsal bone. The phalanges are the parts of the foot that stick out on the foot; that is really the toe. * * * In referring to the percentage of disability, if you confine it just to that foot, I think the percentage would be higher than 50 to 60; it would be maybe 60 or 75. If a man's foot has lost function 60 to 75 per cent., his earning capacity has been reduced the same, if he earns his living by labor. * * * I don't think, however, that he would get much benefit from surgery. As to whether if he uses his foot and the bones strengthen there will be less likelihood of discomfiture as time goes on and less discomfiture as time goes on than there is possibly at the present, well, I don't know; it has been about 18 months now, or longer; it ought to be as well as it will ever be by this time, I think."

Dr White testified:

"I have had occasion to examine the foot of this young man. It was the 27th of April of this year. I have an X-ray picture that I myself made and developed, here on the table near me, the picture of this young man's foot. * * * I am holding this picture before the window so that the jury may see what it shows. It shows an absence of the distal joint, the end joint of the big toe; the three bones of the second toe with a portion of the foot bone called the metatarsal is gone—about two thirds of that bone. Then there was a break in the pivot of this joint of the third toe, with a displacement towards the big toe. * * * That white formation on each side of where I showed that last break is the remains of callous, new bone formation after the injury. When a young man who is a laboring man, dependent upon labor alone for a living, has suffered such injuries as I have described to the jury, I would say his fitness for labor in the future or at the present time has been markedly damaged. I don't think that foot will improve very much with time."

Appellee, Youngblood, testified:

"I am 23 years old. * * * They performed an operation on my first toe, and took out a joint above the toe joints themselves; it is way back up in my foot. * * * The reason I went back to work is because they stopped my compensation, and I had a wife and baby and had to live. The doctors did not tell me I was able to go back and resume work. * * * After I came back from Houston and went to work for Mr. Lay, I worked for him about two weeks, and then he laid me off. * * * After Mr. Lay laid me off, I started in a café at Honey Island. That is about 14 miles from Kountze; it is on the Santa Fé railroad. My business venture wasn't very successful. I was in it about three weeks. Something like that. * * * I came to High Island and went to work on a drilling rig for the Sun Company, washing pipe. I did not get along with that all right; that is the reason I am off right now. I couldn't hold the job; I kept laying off with my foot; it bothered me so I couldn't work. It would just hurt so bad I couldn't stand up, and my ankle would get bad and turn on me. My ankle would turn on me very often. I did not walk back and forth to my work; I went in a car. * * * As to whether there is any reason why I can't stand on my foot and walk with it, will say, I can stand and walk on it, but it is pain all the time. * * * At times I have to get tape and gauze and tie my ankle up, bandage it right tight, because of that pain. * * * It was Mr. Paggi who told me he would have to let me go. I went back to Mr. Paggi for a job whenever the insurance company stopped my compensation. I talked to Mr. Paggi himself. I asked for any kind of a job I could make a living on. I was not able to go to work then. * * * I am not doing any work now. It has been about four days since I did any work. The reason I quit four days ago, they let me go out there. I kept laying off, thinking I would get better, and they just told me they would have to let me go, because they couldn't depend on a man like that. * * * "

[4] Under the evidence quoted, appellee's injury was not "specific," within the meaning of article 8306, § 12; that is, it did not relate alone to the loss of his toes. This evidence brings this case within the rule announced by us in Millers' Indemnity v. Cahal (Tex. Civ. App.) 257 S. W. 957:

"To be 'specific' within the meaning of the cited article, the injury must relate to the injured member alone, and incapacity must relate alone to the loss of the use of the injured member. If because of the injury to the specific member the entire body is made to suffer, thereby incapacitating the laborer from the performance of his usual and customary duties, as was the case of this appellee, then the injury is not 'specific'."

See, also, Lumbermen's Reciprocal Association v. Anders (Tex. Civ. App.) 292 S. W. 265, and Security Union Casualty Co. v. Frederick (Tex. Civ. App.) 295 S. W. 301.

What we have said disposes of all propositions advanced by plaintiff in error. The judgment of the trial court is affirmed.