## FIDELITY & CASUALTY CO. OF NEW YORK v. VAN ARSDALE et al.

### No. 4672.

Court of Civil Appeals of Texas. Amarillo.
June 21, 1937.

Rehearing Denied Sept. 13, 1937.

Bryan & Bryan, of Houston, for appellant.

King, Wood & Morrow and Sam Holliday, all of Houston, for appellee.

STOKES, Justice.

This is an appeal from a judgment of the district court of Brazoria county, awarding appellee compensation for the death of her husband, Harry Van Arsdale, under the

Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.). It was alleged that Harry Van Arsdale died on August 26, 1934, as the result of alleged injuries received the day before, arising within the scope of his employment at Freeport by Houston Lighting & Power Company, which company carried a policy of compensation insurance issued by appellant. The deceased husband of appellee had been employed by the Lighting & Power Company for a number of years as service man. His work consisted principally of answering calls of the customers and in adjusting electrical fixtures, but on occasions he would return to the shop in the rear of the building and do repair work. His employment involved heavy lifting and manual labor, such as is usually performed by such employees. He was 28 years of age and of robust physique and apparently in good health.

The testimony shows that a year or more before his death he had occasional headaches, but they had ceased and he had not suffered from them for at least 6 months. About noon, August 25, 1934, he was in the shop and, for no assigned reason, stepped over to an icebox or refrigerator weighing some 250 or 300 pounds, and moved it some 12 or 18 inches on the terrazzo floor of the shop, and almost immediately appeared at the door with his hands to his face and stated to another employee who was waiting outside that he had a very severe headache and complained of an excruciating pain radiating from his jaw to the region of the temple. He and the employee mentioned got in the company's truck, the deceased doing the driving, and started home for lunch. The employee, Dooley Riggs, lived nearer the shop than Van Arsdale, and it was their purpose to drop Riggs at his home, but, instead, Van Arsdale drove two blocks past Riggs' home, and then expressed confusion as to where he was, and turned the truck around, taking Riggs back to his home, and then proceeding on to his own home. Upon entering the house he complained of a severe pain and immediately went to bed. Dr. Scott, a physician, was called and his condition found to be serious. Dr. Scott called Dr. Reeves, and Van Arsdale was immediately removed to the hospital, where he died at noon the next day. The physicians testified that his death was caused by a cerebral hemorrhage, and that the most probable diagnosis was that he was suffering from a tumor of the brain, which ruptured, causing the hemorrhage.

Appellee alleged in her petition that the injuries arose out of and were caused by his employment. She alleged that, when the deceased caught hold of the icebox to move it, he placed himself in a strained position, and, in attempting to move or lift the box or refrigerator, "he exercised a severe and unusual physical strain, causing his blood-pressure to rise or to be increased; that such strain and such increased blood-pressure placed a strain or pressure in and on his brain, spinal cord, heart * * * nerves and muscles of his body, limbs, neck, head and brain, spinal cord and other organs of his body, and same were thereby caused to be ruptured, broken, stretched, lacerated and caused to hemorrhage and bleed and he was thereby caused to have a cerebral or brain hemorrhage * * * which resulted in his death within a few hours after such injuries were received. * * * That his death was caused by and resulted from such injuries sustained by him as aforesaid and the diseases and infections naturally resulting therefrom."

The case was submitted to a jury upon special issues, some of which were as follows:

"1st. Do you find from a preponderance of the evidence that Harry Van Arsdale, on August 25, 1934, sustained a hemorrhage of the brain? Answer 'Yes' or 'No' as you may find the facts to be. Answer: Yes."

"2nd. If you have answered Special Issue No. 1 'Yes', and only in that event, then answer the following: Do you find from a preponderance of the evidence that such hemorrhage of the brain, if any, was an accidental injury, as that term is hereinabove defined for you? Answer 'Yes' or 'No' as you may find the facts to be. Answer: Yes.

"3rd. If you have answered Special Issues Nos. 1 and 2 'Yes', and only in that event, then answer: Do you find from a preponderance of the evidence that such accidental injury, if any, received by Harry Van Arsdale was an injury sustained in the course of his employment by the Houston Lighting & Power Company as the term 'in the course of his employment' is hereinabove defined for you? Answer 'Yes' or 'No' as you may find the facts to be. Answer: Yes.

552

"4th. If you have answered Special Issues Nos. 1, 2 and 3 'Yes', and only in that event, then answer: Do you find from a preponderance of the evidence that such hemorrhage of the brain, if any, was a producing cause of the death of Harry Van Arsdale, as the term 'producing cause' is hereinafter defined for you? Answer 'Yes' or 'No' as you may find the facts to be. Answer: Yes."

Answering further special issues, the jury found that Harry Van Arsdale was not suffering from a cerebral hemorrhage prior to the time of the alleged act of moving the icebox in question, and that the cerebral hemorrhage was not caused solely by a pre-existing diseased condition of the deceased, and that he was not suffering from a tumor of the brain on and immediately prior to August 25, 1934.

The court charged the jury that by the term "injury sustained in the course of his employment," as used in the charge, meant "all injuries of every kind and character having to do with and originating in the work of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer."

Upon the verdict of the jury, judgment was rendered in favor of appellee, setting aside the award of the Industrial Accident Board, and granting compensation of $17.70 per week for 360 weeks, to be paid in a lump sum as prayed for and as authorized by the verdict of the jury.

Under its first four propositions, appellant contends that the trial court should have granted its motion for a peremptory instruction, asserting that appellee had not discharged the burden resting upon her to prove by a preponderance of the evidence that the deceased, Harry Van Arsdale, sustained accidental, personal injuries while in the course of his employment for the subscriber, which caused or contributed to his death. Under the testimony of the physicians and other witnesses, the conclusion is inescapable that the mere moving of the icebox by a man of the physical strength of Harry Van Arsdale would not, of itself, have caused a hemorrhage of the brain. It was shown however, that Van Arsdale was undoubtedly suffering from a tumor of the brain, and that, in such cases, the blood vessels of the brain, in the region of such tumors, are diseased and greatly weakened, and that the slightest strain or exercise by a person having such tumor is calculated to increase the blood pressure and cause a rupture of the blood vessels in the region of the tumor. It was shown that this is likely to happen to a person of apparently robust strength, having such a tumor, who is otherwise free from any physical ailments. Dr. Scott testified, in answer to a hypothetical question, setting forth the conditions surrounding the illness and death of Van Arsdale, that in his opinion the strain of moving the icebox was the cause of his death, but stated that his conclusion was based on other matters not included in the hypothetical question. We think the record warrants the conclusion that these other matters consisted of the examination which was made by the physicians and their conclusion that Van Arsdale was suffering from a tumor of the brain. If, at the time, he was suffering from a tumor of the brain and the blood vessels in the region of the tumor were weakened thereby, and, if, under such conditions, a strain, however slight, increases the blood pressure to the extent that a hemorrhage of the brain may result from it, then there was evidence in the record which would have warranted the jury in concluding the hemorrhage and resulting death of Van Arsdale was due, in part at least, to the physical effort involved in moving the icebox. The court, therefore, was not warranted in giving a peremptory instruction. It would have been a matter for the jury to decide as to whether or not the effort put forth by Van Arsdale in moving the icebox had anything to do with precipitating the cerebral hemorrhage that occurred at the shop immediately before the advent of the severe pain in his head. These propositions are therefore overruled.

Under the fifth proposition, appellant assigns error of the court in permitting the witness Dr. Scott to answer the hypothetical question propounded to him by appellee's counsel, in which an effort was made to set forth all of the conditions surrounding the occasion of the illness and death of Van Arsdale. This assignment is based upon the ground that the answer of the witness would necessarily be based upon other facts and circumstances known only to the witness and would be speculative, conjectural, and hearsay. There is no exclusive form in which a hypothetical question is required to be framed. It should recite all of the facts in evidence and assume them to be true. The witness is then permitted to base his opinion upon

the facts included in the question. It should deal with probabilities and not speculation or possible results. Moreover, in answering such a question, the witness should not go outside of the testimony and consider outside matters, although they may be known to him. On cross-examination, the witness testified that, in his answer to the hypothetical question, he had taken into consideration other matters than those included in it. If these other matters had not been explained by him and afterwards included in the evidence, we think the objection to the hypothetical question should have been sustained. On cross-examination, however, counsel went over the matter thoroughly with the witness, and elicited the fact that the other matters mentioned by him consisted of the examination made by him and the other attending physicians, and his conclusion and diagnosis of the case. These included the very positive conclusion that the deceased was suffering from a tumor of the brain and that his death was caused by a rupture and resulting hemorrhage from the tumor. We think the record warrants the conclusion that these are the matters which were taken into consideration by the witness and not included in the hypothetical question, and rendered harmless the consideration at the time of outside matters in answering the hypothetical question, and this assignment will be overruled.

Under its sixth, seventh, eighth, and ninth propositions, appellant contends that reversible error was committed by the court in the manner in which the special issues were submitted. It will be noted that the issues were in general form and sought to elicit from the jury findings as to whether or not Van Arsdale sustained a hemorrhage of the brain, and, if so, whether or not such hemorrhage was an accidental injury and was sustained in the course of his employment and was the producing cause of his death. Appellant's contention is that the case pleaded by appellee was not submitted to the jury, and we think these propositions must be sustained. Appellee bottomed her case upon the allegation that her deceased husband, as part of his work, and while working, caught hold of a box to move same, and "thereby placed himself in a strained position, and in attempting to move or lift such box or refrigerator, he exercised a severe and unusual physical strain, causing his blood-pressure to rise or be increased,"

which resulted in the hemorrhage. The testimony shows, for such a result to happen under such conditions, it was necessary that the effort of moving the box be accompanied by some other condition which made such a hemorrhage possible. Appellee did not plead the weakened condition of the blood vessels of the brain by the presence of the tumor, but simply based her case upon the straight allegation that in moving the icebox the deceased was subjected to such an unusual strain as, of itself, to result in a rupture of the blood vessel and produce the hemorrhage. The jury was not asked to determine any fact in connection with the alleged strain, nor was the diseased condition of the deceased's brain submitted to them. The issues submitted were general in their nature, and simply went to the questions of whether or not the deceased had a hemorrhage at the time, and, if so, was it an accidental injury and sustained in the course of the employment and caused his death. These issues were all answered in the affirmative by the jury and all of them may have been true and still appellant not have been liable under its policy. It was shown, without controversy, that a tumor of the brain, such as it was shown Van Arsdale had, was likely to rupture at any time. In fact, the doctors testified that in the majority of cases such ruptures occur while the patient is lying prone and even when the patient is asleep and exerting no effort whatever. If that is true, then it follows as a matter of course that such a rupture may occur while the patient is moving around, or indulging in the slightest exertion. If, in this case, the work Van Arsdale was doing at the time the rupture occurred had nothing to do with the rupture of the tumor, but the time had arrived in its course for it to rupture, and it would have ruptured at the time it did whether he was at work in the shop or lying upon his bed at home, then manifestly his death was caused by the tumor and was not and could not have been an accidental injury for which appellant would be liable.

Appellee did not send to the jury special issues designed to elicit from them information on the facts pleaded by her. She alleged that the hemorrhage was caused from a strain, yet the jury was not asked to find whether it was or not.

In the case of Security Mutual Casualty Co. v. Bolton, 84 S.W.(2d) 552, 555, the Court of Civil Appeals at Fort Worth

said: "But we have reached the conclusion that the court erred in failing to submit to the jury whether or not plaintiff was injured in .the manner alleged in his petition, rather than in general terms as was done in issue No. 1. Before the issues were submitted, counsel for defendant excepted to that issue on that ground, and that exception is brought forward in an assignment of error here. It is a familiar rule that plaintiff must recover upon the cause of action alleged in his pleadings and he must prove the truth of those allegations. And a suit arising under the Workmen's Compensation Statutes is no exception to that general rule."

In this case we think appellee not only failed to elicit from the jury findings upon the issues pleaded by her, but that the findings of the jury, standing alone, warrant a judgment against appellant, whether it is liable under its policy or not. Obviously, this would be wrong. If appellant is liable, it is only under the terms of the policy which it issued. It would not be liable for death occasioned by natural causes, and we think the error here assigned is twofold: First, it fails to submit the case as pleaded by appellee, and second, it fails to have the jury determine whether the death of Van Arsdale was due to natural causes or to an accidental injury sustained in the course of his employment. Associated Employers' Reciprocal v. Brown (Tex.Civ.App.) 56 S.W.(2d) 483; Travelers' Ins. Co. v. Washington (Tex.Civ.App.) 5 S.W.(2d) 783; Commercial Standard Ins. Co. v. Noack (Tex.Com.App.) 62 S.W. (2d) 72; Texas Employers' Ins. Ass'n v. Herring (Tex.Com.App.) 280 S.W. 740.

Under its thirteenth and fourteenth propositions, appellant attacks the charge of the court upon the preponderance of the evidence. The jury were charged that the preponderance of the evidence meant the greater weight of credible testimony by either side adduced. Each question asked, "Do you find from a preponderance of the evidence, etc.," and at the close instructed them to answer "Yes or no, as you may find the facts to be." Appellant contends that the form of the special issues, when taken in connection with the instruction in the general charge on the preponderance of the evidence, placed upon it the burden of proving the negative of each issue in the same manner as it placed upon appellant the burden of proving the affirmative thereof. Under the holdings of the courts, we think the contention is correct. The issues should be so framed as definitely to place the burden upon the party pleading the affirmative of the question included in the special issue. The court instructed the jury that the preponderance of the evidence meant the greater weight of the credible testimony by either side adduced. The special issues submitted asked the jury, "Do you find from a preponderance of the evidence," and then required them to answer, "Yes or no, as you may find the facts to be." Under these instructions, if the jury should answer in the affirmative, the charge indicates it must be upon a preponderance of the evidence as defined in the charge, and, if they should answer in the negative, their answer should likewise be based upon a preponderance of the evidence. To say the least, the instructions, if literally interpreted, were confusing and did not definitely and clearly place the burden of proof. Psimenos v. Huntley (Tex.Civ.App.) 47 S.W.(2d) 622; Houston & T. C. Ry. Co. v. Stevenson (Tex. Com.App.) 29 S.W.(2d) 995; McClelland v. Mounger, 107 S.W.(2d) 901, recently decided by this court; Commercial Standard Ins. Co. v. Noack (Tex.Com.App.) 62 S.W. (2d) 72.

For the errors indicated, the judgment is reversed and the cause remanded.