## PETROLEUM CASUALTY CO. v. SCHOOLEY.

No. 3847.

Court of Civil Appeals of Texas. El Paso.
June 29, 1939.

Rehearing Denied July 17, 1939.

Hurst, Leake & Burke, of Longview, and Knox W. Gilmore, of Houston, for appellant.

Jones & Jones, of Marshall, for appellee.

HIGGINS, Justice.

This is a suit by the appellee Schooley upon appeal from an adverse ruling of the Industrial Accident Board upon his claim for compensation under the Workmen's Compensation Law (Vernon's Ann.Civ. St. art. 8306 et seq.). Plaintiff in his petition alleged that he was an employee of the Humble Pipe Line Company and "On or about the 4th day of May, 1937, plaintiff, while engaged in one of his usual and customary duties of lining 8" pipe for a welder, sustained an accidental injury, by reason of lifting said pipe and the dropping of the other end thereof, straining the muscles of plaintiff's groins and causing the injuries hereinafter complained of. * * *

"That as a result of the accidental injury sustained by plaintiff, as above set forth, plaintiff sustained a bi-lateral inguinal hernia, or potential inguinal hernia which totally disabled him for labor, and that said condition has existed up to the present time, and will continue in the future totally and permanently disabling plaintiff from manual labor.

"IV. Plaintiff would show that at the time of the accident above described that he sustained injuries resulting in hernia; that the hernia appeared suddenly and immediately following the injury; that the hernia did not exist in any degree prior to the injury for which compensation is claimed; and that the injury was accompanied by pain. * * *

"VIII. Plaintiff would show that when he presented his claim before the Industrial Accident Board of Texas, he requested an operation by the insurance company, which operation was refused by the insurance company and which operation was denied him. Plaintiff would show that before and after presenting his claim before the Board he has made demands for an operation on the insurance company and has been willing to submit to such an operation, and particularly that he made such a demand for an operation to the insurance company on date of March 18, by letter, but which demand was refused. That at all times mentioned herein he has been willing to submit himself for an operation for hernias, but that such oper-

ation was refused and denied him by the defendant.

"IX. ·As a result of his injuries which have been above set out and as a result of the failure of the defendant to furnish him with medical and surgical treatment in accordance with the provisions of the Workmen's Compensation Act. of Texas, the plaintiff would show that he has suffered total and permanent incapacity to labor as that term is defined in the Workmen's Compensation Act of Texas.

"X. Pleading expressly in the alternative and without waiving the previous allegations of total and permanent disability but still insisting upon the same, the plaintiff would show that under the Workmen's Compensation Act of Texas he is entitled to radical operation and surgery for treatment of his injuries. And in the event the same be successful, to fifty-two (52) weeks compensation from the date of the operation.

"XI. Pleading expressly in the alternative and without waiving any of his previous allegations of disability but still insisting upon same and if it be found that plaintiff is in such physical condition as to render it more than ordinarily unsafe for him to submit to such an operation or in the event that defendant further refuses to have such operation performed, then plaintiff would show that he is entitled to compensation for permanent and total disability under the general provisions of the Workmen's Compensation Act of Texas."

Other allegations in the petition are the usual ones in cases of this nature.

The findings made may be summarized as follows:

1. The plaintiff on May 4, 1937, suffered accidental personal injury while working within the scope of his employment for the Humble Pipe Line Company.

2. Plaintiff as a natural result of his said injury did not suffer total incapacity to labor.

Issues 3 and 4 were submitted conditionally and were not answered.

5. Plaintiff was rendered partially incapacitated to labor as a result of his said injuries.

6. The extent of such partial incapacity was seventy percent.

7. Such partial incapacity is permanent.

8. Such partial incapacity is not temporary.

Issue 9 was conditionally submitted and not answered.

10. The amount of money just and fair to both parties to be fixed as the average weekly wage of the plaintiff is $31.68 per week.

11. Manifest hardship and injustice will result to the plaintiff if his compensation is not paid in a lump sum.

12. Plaintiff's incapacity to labor is not due solely to high blood pressure.

13. "Do you find from a preponderance of the evidence that any part of plaintiff's incapacity to labor is not due to high blood pressure? Answer: 'It is,' or 'It is not.'

"Answer: It is not."

Issue 14 was submitted conditionally and not answered.

The Court in its judgment found plaintiff was entitled "to a judgment for 70% permanent partial incapacity beginning on May 4th, 1937 for the full period of 300 weeks, and that his compensation rate should be fixed at 70% of 60% of the amount found by the jury to be fair and just to both parties as the average weekly wage of the plaintiff, which wage was found to be the sum of $31.68.

"The Court finds that 59 weeks of compensation at the rate of $13.30 per week has accrued up to date of June 21st, 1938, and that plaintiff is entitled to 6% interest per annum on each installment from its due date to date of June 21st, 1938, and that such 59 weeks of compensation and such interest amounts to the sum of $811.85," and rendered judgment accordingly. From which judgment the Petroleum Casualty Company, the defendant's insurance carrier, prosecutes this appeal.

The undisputed evidence shows that plaintiff does not have a hernia. Appellee in his brief admits "all witnesses agreed that plaintiff did not have a rupture or hernia."

Dr. Khoury, the only physician witness called by plaintiff, testified:

"Q: When you examined Mr. Schooley, doctor—First of all, did you examine him with reference to hernia? A. Yes, sir.

"Q. When you examined him with reference to that, what did you find, if anything? A. At that time, I called his attention to the fact that he had a weakness in the inguinal ring on both sides and recommended he have that taken care of in the way of surgery. * * *

"Q. Doctor, did you examine both rings? A. I did.

"Q. Did you find any weakness in either or both sides? A. I thought both sides were weak.

"Q. Was there any expression of pain on pressure, doctor? A. Not very much.

"Q. When you inserted your finger there, did you say, or did I understand you to say those inguinal rings were enlarged? A. Yes, larger than what I thought was normal size. * * *

"Q. Doctor, have you or not had occasion to examine Mr. Schooley several times since? A. I think one time, since.

"Q. Do you remember about when that was? A. Well, that was sometime last week.

"Q. At that time doctor, did you say that was last week? A. Yes, sir.

"Q. To refresh your recollection, did you examine him the week before that when I was down there? A. I don't have my card.

"Q. Anyhow, you have made another examination? A. Yes, sir.

"Q. On this last examination, doctor, did you again insert your finger in the inguinal ring? A. Yes, I did.

"Q. What, if any, was the change in that condition and previously that you told us about? A. I didn't notice any marked change, couldn't tell any difference.

"Q. Still your opinion that is a potential inguinal hernia? A. Yes, sir.

"Q. Now, doctor, with reference to this potential inguinal hernia, is it or not such that disables a man from doing manual labor? A. It might, yes, heavy work."

On cross examination, this witness testified:

"Q. It means at this time he doesn't have a hernia but a weakness liable to result in one from strain or heavy manual labor? A. Yes sir. * * *

"Q. And your examination, he doesn't have a hernia in either one but a weakness there liable to result in one? A. He has a weakness of the internal ring.

"Q. Which means it is larger than the normal? A. Yes, plus the impulse in coughing or straining. * * *

"Q. And some people have hernias that don't know they have them? A. Yes, sir.

"Q. If they are born with a large ring they have a potential hernia? A. That is right.

"Q. If that ring is large? A. Yes, sir.

"Q. People have potential hernias that never have a trauma? A. Some do, yes, sir.

"Q. Even a baby born with an enlarged ring has a potential hernia? A. That is right.

"Q. This man has nothing more than a potential hernia? A. That is right."

The evidence conclusively showing, and the appellee admitting, he does not have a hernia, it follows, of course, he is not entitled to recover under the hernia provisions (Art. 8306, § 12b, R.S.) of the Compensation Law. Appellee does not so contend.

His right to compensation, if any, must be based upon the general provisions of the law as for a general injury, rather than the alleged specific injury of 'hernia. Ellis v. United States Fidelity & Guaranty Co., Tex.Civ.App., 6 S.W.2d 811. This was recognized by the learned trial Court, as is manifest from the issues submitted to the jury and the judgment rendered. Such submission and recovery, however, were unauthorized, for the petition bases appellee's right of recovery upon the theory that his injury was compensable under the hernia provisions of the law, as for a specific injury of that nature. For this reason the judgment must be reversed.

Appellant insists judgment should be here rendered in its favor because the evidence merely shows a condition predisposing appellee to hernia—in other words, a potential hernia—and that such a condition is not compensable. We do not concur in this conclusion.

According to the testimony of Dr. Khoury, appellee has enlarged internal inguinal rings on both sides, causing a weakness which might disable plaintiff from doing heavy work; he has a potential hernia. The inference from Dr. Khoury's testimony is that coughing or straining might in the future produce a hernia. If this condition was produced in the manner alleged by plaintiff and caused total or partial incapacity of a permanent or temporary nature, it is compensable as a general injury under the general provisions of the law. This is true though one of the effects of the injury is to produce a predisposition to hernia.

Appellant presents a number of other propositions but they relate to matter which should not recur upon retrial.

294

They may readily be avoided. The only matter in this connection to which we deem it advisable to refer concerns the criticism made of the general form of the submission of accidental injury in Issue 1. It is asserted the inquiry should have been limited to the injury specifically pleaded.

Some authorities support appellant's proposition. Security Mutual Casualty Co. v. Bolton et al., Tex.Civ.App., 84 S.W.2d 552; Casualty Underwriters v. Lemons et al., Tex.Civ.App., 114 S.W.2d 333; Fidelity & Casualty Co. of New York v. Van Arsdale et al., Tex.Civ.App., 108 S.W.2d 550; Commercial Standard Ins. Co. v. Noack, Tex.Com.App., 62 S.W.2d 72; Travelers' Ins. Co. v. Washington, Tex. Civ.App., 5 S.W.2d 783; Associated Employers' Reciprocal v. Brown, Tex.Civ. App., 56 S.W.2d 483; Ellis v. United States Fidelity & Guaranty Co., Tex.Civ. App., 6 S.W.2d 811.

Under other authorities the error, if any, should be regarded as harmless. Associated Indemnity Corp. v. Baker, Tex. Civ.App., 76 S.W.2d 153; Southern Underwriters v. Kelly, Tex.Civ.App., 110 S. W.2d 153.

In view of the rulings in the cases first cited, it is suggested that upon retrial the issue of injury be so submitted as to avoid the criticism here made of the first issue.

Reversed and remanded.