**FEDERAL UNDERWRITERS EXCHANGE**
**v. SIMPSON.**

No. 8860.

Court of Civil Appeals of Texas. Austin.

Feb. 21, 1940.

134

Benbow, Saunders & Holliday and Charles Crenshaw, all of Dallas, for plaintiff in error.

Frank C. Dickey, Ballinger, and M. E. Sedberry, of San Angelo, for defendant in error.

BAUGH, Justice.

This is a workmen's compensation case. Federal. Underwriters Exchange was the insurer; H. B. Zachry & Company, the employer, and James M. Simpson, Jr., the employee. Simpson was injured in Concho County, on May 8th, 1936, for which injury he was awarded compensation by the Industrial Accident Board. Federal Underwriters sued in Concho County to set aside the award. Simpson filed his cross-action, whereupon the insurer took a non-suit, the case was transferred to the District Court of Runnels County by agreement, tried to a jury on special issues, Simpson found to be totally and permanently disabled, and compensation awarded him for 401 weeks; hence this appeal.

The injuries suffered were alleged as follows: "* * * that while cross-complainant was in the discharge of his duties as such truck checker for said employer on or about May 8, 1936, and in the course of his employment in his master's said business, another employee of said employer was swinging a sledge hammer in the discharge of his duties as such employee, and accidentally swung such hammer against cross-complainant's left arm and body and broke said arm about half way between the elbow and the shoulder joint, and bruised, injured, and dislocated the bones, muscles, and nerves in said cross-complainant's left arm and left shoulder and left shoulder joint and said injuries to said arm and shoulder and to the bones, muscles, and nerves therein were such as to deprive the cross-complainant of the use of said arm and shoulder for work of any kind and as a result of said injuries said arm and said shoulder became and are now diseased and damaged and will continue to be diseased and damaged as a result of said injuries, to such an extent as that cross-complainant has suffered ever since, is now suffering and will continue permanent-ly to suffer total disability or total incapacity to labor on account of said injuries * * *."

In answer to special issues submitted to them the jury found:

1. That Simpson's left arm was broken between the shoulder and elbow;

2. That he suffered injuries to the muscles and nerves of his left arm;

3. That he suffered injuries to his left shoulder and shoulder joint;

4. That the injuries found resulted in his total permanent incapacity, as that term was defined in the charge.

Insurer's first contention is that neither the pleadings nor the proof are sufficient to authorize recovery for total permanent disability, for the reason that at most no more than a total loss of his left arm was pleaded or proven; and that consequently its maximum liability is limited by Sec. 12, Art. 8306, R.C.S., to 60% of his average weekly wage for 200 weeks.

The rule was laid down in Petroleum Co. v. Seale, Tex.Com.App., 13 S.W. 2d 364, 365, approved by the Supreme Court, that where injury results to a particular member of the body, compensation for loss of which is specifically provided by the statute, liability of the insurer is limited to that amount, even though the loss of, or injury to, that particular member actually results in total permanent incapacity of the employee to labor. This holding has been frequently followed and applied. See Texas Employers Ins. Ass'n v. Galloway, Tex.Civ.App., 40 S.W.2d 973; Texas Employers Ins. Ass'n v. Neatherlin, Tex.Com.App., 48 S.W.2d 967; Consolidated Underwriters v. Wilson, Tex.Civ.App., 111 S.W.2d 865; Traders & General Ins. Co. v. Marrable, Tex.Civ.App., 126 S.W. 2d 746; 45 Tex.Jur., § 175, p. 607. This rule, however, does not preclude an employee from recovery under the more liberal provisions of the Workmen's Compensation Law, if he allege and prove that the injury to the particular member additionally extended to and affected other portions of his body, or impaired his general health to such an extent as to totally and permanently incapacitate him. See Seale and Neatherlin cases, supra; 45 Tex.Jur., § 178, p. 612; and numerous cases there cited.

While Simpson alleged injuries not only to his left arm, but also to his left shoulder and left shoulder joint, and the

jury found that such injuries were suffered; a careful reading of the testimony shows, in the last analysis, no more than the loss of the use of his left arm. The break in the bone was not properly adjusted, there was limited use of the elbow and hand, and limited pivoting of the arm at the shoulder joint; but there was not a loss of the arm, nor total loss of the use of it. The impairment of its use was placed by the insurer's physician at 20%, and by the employee's physician, both of whom testified, at not exceeding 60%. The evidence was sufficient to show that he was, and would continue to be, unable to use that arm to perform any physical labor with it. But it was not contended, and we do not interpret Simpson's own testimony to be, that any other portion of his body or his general health was impaired; nor that he still could not do anything that he could have done had he lost his arm above the elbow. The injury did not impair the use of his right arm, nor his general health. He testified that he could ride a horse or drive a car; that he represented his district in the Legislature; that he had engaged in the real estate and insurance business; and his physician testified that the injury would not prevent him from performing any clerical work not requiring the use of his left arm. Under these facts and circumstances, his recovery should have been limited under Sec. 12, Art. 8306, to the loss of the use of his arm. 45 Tex. Jur., § 174, p. 606, and cases cited.

■ Plaintiff in error next contends that the court erred in submitting issue 15a inquiring whether or not the injuries received by Simpson were confined solely to his left arm; and in not submitting its requested issue inquiring whether or not his "incapacity", if any, resulting from such injuries, was confined to his left arm. There was no error in this. Injury and incapacity are not, of course, synonymous. In the issue complained of the extent of the injuries only, raised by the pleadings and the evidence and controverted by the insurer, was the subject of the inquiry. The extent of the incapacity resulting therefrom was submitted to the jury in other and separate issues, wherein they were asked whether such injuries, already determined by proper inquiries, resulted in Simpson's incapacity, and whether such incapacity resulting therefrom was total or partial, permanent or temporary. This contention is therefore overruled.

■ Plaintiff in error next contends that the trial court's definition of the term "total incapacity", in view of the particular facts of this case, was inadequate. The definition given was identical with that set out in 45 Tex.Jur. § 159, p. 585, and has had repeated approval by the courts. (See footnotes under section cited.) A similar contention was made and overruled by the Supreme Court in Texas Employers' Ins. Ass'n v. Brock, 36 S.W.2d 704. Manifestly the language of the charge, "disqualified from performing the usual tasks of a workman in such way as to enable him to procure and retain employment," is not subject to the complaint that the jury would be led to believe that it related only to the character of employment in which Simpson was engaged at the time of his injury. Western Indemnity Co. v. Corder, Tex.Civ.App., 249 S.W. 316. It was comprehensive enough to include any employment which the employee, after his injury, was qualified to perform.

The next contention urged is that as submitted special issues 1, 2 and 3 were duplicitous and multifarious, in that there was included in one issue the question not only whether Simpson received the particular injuries inquired about; but whether he received same "on or about May 8th, 1936, in the course of his employment as an employee of H. B. Zachry & Company?"

■ If there had been a conflict of evidence upon, or a controversy over, the separate fact issues included in the questions propounded to the jury, this contention would undoubtedly be good. That is, if it had been controverted that Simpson was employed by Zachry & Company; whether he received any injury; and if so, whether it was received in the course of his employment; then these issues should have been submitted separately. If error, it was manifestly harmless in the instant case for the reason that there was no dispute as to the actual facts. The whole case was tried upon the issues of the extent of Simpson's injuries; and the extent of his incapacity resulting therefrom. While the only testimony as to Simpson's employment was by Simpson himself, there was nothing to cast any suspicion upon its verity; the insurer made no attempt to refute it, though it could readily have done so had it not been true; and the case was tried throughout on the assumption, if not upon the definite admission by plaintiff in error, that Simpson

was such employee and that his injuries were received in the course of his employment. Since the case must be reversed, it is not amiss to here observe that the volume of the record could be greatly reduced, the time of the courts conserved, and the costs to the litigants materially lessened, by a pretrial agreement between the parties on uncontroverted facts, and the next trial hereof confined to the only material issues involved,—that is, the extent of the employee's injuries, and the degree and extent of resulting incapacity.

We think it was error to permit Simpson to testify, over objection, that from the best of his knowledge and experience, he did not believe he would ever be able to use his arm; and that it was doubtful whether a successful operation could be performed upon it. This clearly invaded the field of expert testimony in which the injured employee was not shown to have been qualified to give an opinion. This exact character of testimony was condemned in Stowell v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 259 S.W. 311; and Texas Employers Ins. Ass'n v. Brock, Tex.Com.App., 36 S.W.2d 704, 706. See, also, 19 Tex.Jur., § 232, p. 361. Nor can we say that such testimony was harmless in the instant case, especially in view of the fact that neither of the two physicians who were qualified to testify on this issue rated Simpson's disability as total and permanent. Such testimony is clearly distinguishable from that involved in General Life Ins. Co. v. Potter, Tex.Civ.App., 124 S.W.2d 409, relied upon by defendant in error.

Plaintiff in error's next contention relating to recovery by Simpson from the insurer of medical fees is without merit. This contention is that the employee failed to plead and prove that he had given notice to the insurer of the need of such service, and that it had failed, neglected or refused to furnish same. The statute, Sec. 7, Art. 8306, Vernon's Ann.Civ.St. art. 8306, § 7, does require such notice to be given the insurer, that it may have opportunity to furnish such services; but it likewise makes the insurer liable for first aid treatment after injury procured by the employee. Manifestly, setting by a physician of a badly broken arm comes within this category and the reasonable expense incurred by the employee for that purpose was all that the judgment allowed. See Aetna Life Ins. Co. v. Harris, Tex.Civ.App., 83

S.W.2d 1087; Maryland Cas. Co. v. Moore, Tex.Civ.App., 74 S.W.2d 769; Id., 129 Tex. 174, 102 S.W.2d 1118.

While the case must be reversed for the reasons stated, we have concluded that good cause exists for not taxing all the costs of the appeal against appellee. See 11 Tex.Jur. § 77, p. 363. The issues involved in this suit were few and simple, yet the transcript herein consists of 186 typewritten pages, approximately 40 pages of which are single spaced. The Insurance Company's objections and exceptions to the court's charge comprise 58 typewritten pages. The first 26 of these objections are identical, consisting of 8 subdivisions each, in stereotyped form, directed separately to each of the issues submitted to the jury, many of which have no application thereto. They are identical with those condemned by us in an appeal by this same insurer from a judgment in favor of Walker against it, reported in Federal Underwriters Exchange v. Walker, Tex.Civ.App., 134 S.W.2d 388, wherein they are copied and here referred to. In brief, when considered separately they constituted 208 objections to the court's charge. In addition to these there were lodged against such charge 38 other objections and exceptions, many of them containing several subdivisions setting up separate objections. These 38, when the subdivisions are considered separately, contain 109 objections, or a total aggregate of 317 objections and exceptions to the court's charge in a case where, as above stated, the issues were few and simple, the only real controversy involved being the extent of Simpson's injuries, and the degree and length of his incapacity resulting therefrom.

In its motion for rehearing these objections and exceptions were reiterated, and 57 additional grounds of error asserted as arising out of the trial, or from the judgment rendered. In brief, 374 grounds of error were set up in said motion. These are all brought into the transcript and constitute the major portion of it.

This method of procedure, and the useless and inexcusable enlargement of the record as a result, constitutes such a flagrant and palpable abuse of judicial process and imposition upon the trial court; and manifests such a design to thwart, rather than promote, orderly procedure; and to impede the prompt, simple and economic administration of justice, that we are unwilling to let it pass without a judi-

cial condemnation. By virtue of such unwarranted, inapplicable, and previously designed method of procedure adopted by plaintiff in error, the record herein has been uselessly lengthened; and the cost thereof unnecessarily increased. Under these facts and circumstances, notwithstanding a reversal herein, there is no just ground for visiting upon appellee herein the additional costs incurred because of such method of procedure resorted to in the trial court by the plaintiff in error. In our opinion, and we so expressly find, it constitutes "good cause" for taxing at least one-half of the cost of making up the transcript against the plaintiff in error.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded for another trial. $61.75 of the costs, being one-half of the cost of making the transcript, are ordered taxed against the plaintiff in error; the remaining costs to be taxed against the defendant in error.

Reversed and remanded.