### MITCHELL v. FIDELITY & CASUALTY CO. OF NEW YORK.

No. 631.

District Court, S. D. Texas, Houston Division.

March 7, 1942.

Burris & Benton, of Houston, Tex., for plaintiff.

Bryan & Bryan, of Houston, Tex., for defendant.

KENNERLY, District Judge.

This is a suit by plaintiff against defendant for compensation under the Texas Workmen's Compensation Law, Articles 8306 to 8309a, Vernon's Annotated Texas Civil Statutes. Plaintiff L. C. Mitchell is the employee, the firm or partnership of Wohlfeld-Dalton-Dellone is the employer, and defendant the Fidelity & Casualty Company of New York is the insurer, underwriting the payment of compensation owing by employer to their employees.

On or about March 6, 1941, employer was a contractor, engaged in building houses at Camp Wallace, near Hitchcock, in Galveston County, in this District. Plaintiff was a carpenter, working on such houses, and was injured by being struck by an automobile while walking away from the house upon which he had been working that day.

The case was tried with a jury, and at the close of plaintiff's evidence, and again at the close of all the evidence, defendant moved for a directed verdict. Decision on the motions was reserved under Rules of Civil Procedure, Rule 50, 28 U.S.C.A. following section 723c. The case was submitted, and the jury answered questions propounded, under Rule 49(a). The rate of compensation was stipulated.

Plaintiff is now moving for judgment on the verdict, and defendant is now pressing its motions for directed verdict, and in the alternative, moving for judgment on the verdict.

■ 1. The first question is whether, under Subdivision 5 of Section One of Article 8309, plaintiff sustained an injury in the course of his employment.

There was evidence that plaintiff, with other employees, was on March 6, 1941, at Camp Wallace, engaged as a carpenter on houses being erected within a large enclosure to which there were two places of ingress and egress. That the employees were identified by a numbered badge issued to them and which they retained during their employment and wore while seeking ingress to and while within the enclosure. That upon arriving each morning, each employee reported to the office of employer near a place of ingress, and being there identified by his badge, received from employer, in addition to the badge, a metal disc (called a "brass"), containing the same number as that of his badge. That with this "brass" and the badge, he was permitted to proceed to the place of work, and to go to work, and when his day's work was over, he was required to return to the office of employer and turn in the "brass". That the "brass" also played an important part in the wage accounting between employer and employee.

There was evidence that when injured, plaintiff was on his way from the house where he had worked that day to the office of employer to turn in his "brass" and to then leave such enclosure.

On the issue of whether plaintiff sustained an injury in the course of his employment, defendant, as stated, moved for a directed verdict, but the Court submitted, and the jury answered, question No. 1,[1] finding that plaintiff did sustain an injury in the course of his employment. Defendant did not except to the question as submitted, nor to the charge of the Court, submitting the issue.

I think defendant was not entitled to a directed verdict on the issue, that the issue was properly submitted to the jury, that there is evidence to sustain the finding of the jury thereon, and that the finding should stand. Winder v. Consolidated Underwriters, 5 Cir., 107 F.2d 973; Federal Surety Co. v. Ragle, Tex.Com.App., 40 S.W.2d 63; Cudahy Packing Co. v. Parramore, 263 U.S. 418, 44 S.Ct. 153, 68 L.Ed. 366, 30 A.L.R. 532; Bountiful Brick Co.

---

[1] Question No. 1 and the answer is as follows:

"Question No. One: Did Plaintiff, L. C. Mitchell, on or about March 6, 1941, at Camp Wallace, near Hitchcock, Texas, while in the employ of Wohlfeld-Dalton-Dellone, sustain an injury in the course of such employment? Answer: Yes."

et al. v. Elizabeth W. Giles et al., 276 U.S. 154, 48 S.Ct. 221, 66 A.L.R. 1402, 72 L.Ed. 507; Texas Employers' Insurance Association v. Anderson et al., Tex.Civ.App., 125 S.W.2d 674; Petroleum Casualty Co. v. Green, Tex.Civ.App., 11 S.W.2d 388; Employers' Liability Assur. Corp. v. Light, Tex.Civ.App., 275 S.W. 685; Insurors Indemnity & Insurance Co. v. Lankford, Tex.Civ.App., 150 S.W.2d 288, 289; Smith v. Texas Employers' Insurance Ass'n, 129 Tex. 573, 105 S.W.2d 192, 193.

2. A quotation from a recent opinion of the Supreme Court of Texas (National Mut. Casualty Co. v. Lowery, 136 Tex. 188, 148 S.W.2d 1089, 1090) seems appropriate as consideration of the next question is approached. I quote (italics mine): "A reading of Article 8306 of our Workmen's Compensation Laws will disclose that it divides compensable injuries into two main classes: *(a) General injuries, and (b) specific injuries.* As we interpret the pertinent provisions of Article 8306, all compensable injuries must be compensated as *general injuries unless such statutes specially classify same as the subject of specific compensation.* It follows that in the case at bar, Lowery must be compensated as for a general injury, unless we can find some statutory authority to compensate him for a specific injury. If such authority exists, it must be found in that part of Article 8306, § 12b," etc.

Plaintiff in his complaint alleges total incapacity as a result of *"general injuries"* and prays for compensation under Section 10 of Article 8306, which is as follows: "While the incapacity for work resulting from the injury is total, the association shall pay the injured employé a weekly compensation equal to sixty per cent of his average weekly wages, but not more than $20.00 nor less than $7.00 and in no case shall the period covered by such compensation be greater than four hundred and one weeks from the date of the injury."

In the alternative, plaintiff alleges incapacity as a result of *"special injuries"*, i. e., the total and permanent loss of the use of his left leg under Section 12 of Article 8306. The applicable portion of Section 12 is as follows (italics mine):

"Sec. 12. For the injuries enumerated in the following schedule the employé shall receive in lieu of all other compensation except medical aid, hospital services and medicines as elsewhere herein provided, a weekly compensation equal to sixty per cent of the average weekly wages of such employé, but not less than $7.00 per week nor exceeding $20.00 per week, for the respective periods stated herein, to-wit:

\* \* \* \* \*

"For the loss of a foot, sixty per cent of the average weekly wages during one hundred and twenty-five weeks.

"For the loss of a leg at or above the knee, sixty per cent of the average weekly wages during two hundred weeks.

\* \* \* \* \*

"In the foregoing enumerated cases of permanent, partial incapacity, it shall be considered that the permanent loss of the use of a member shall be equivalent to and draw the same compensation as the loss of that member.

\* \* \* \* \*

"Where the employé sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation only for the injury which produces the longest period of incapacity; but this section shall not affect liability for the concurrent loss or the loss of the use thereof of more than one member, for which member compensation is provided in this schedule, compensation for specific injuries under this law shall be cumulative as to time and not concurrent.

"In all cases of permanent partial incapacity it shall be considered that the permanent loss of the use of the member is equivalent to, and shall draw the same compensation as, the loss of that member; but the compensation in and by said schedule provided shall be in lieu of all other compensation in such cases.

*"In all other cases of partial incapacity,* including any disfigurement which will impair the future usefulness or occupational opportunities of the injured employé, compensation shall be determined according to the percentage of incapacity, taking into account among other things any previous incapacity, the nature of the physical injury or disfigurement, the occupation of the injured employé, and the age at the time of injury. The compensation paid therefor shall be sixty per cent of the average weekly wages of the employés but not to exceed $20.00 per week, multiplied by the percentage of incapacity caused by the injury for such period not exceeding three hundred weeks as the board may determine. Whenever the weekly pay-

ments under this paragraph would be less than $3.00 per week, the period may be shortened, and the payments correspondingly increased by the board."

Citing Fitzgerald v. Southern Surety Company, Tex.Civ.App., 75 S.W.2d 298, Petroleum Casualty Company v. Seale, Tex.Com.App., 13 S.W.2d 364, and other similar cases, defendant contended at the trial that under Section 12, the issue of the permanent loss of the use of plaintiff's left leg should not be submitted to the jury, but if anything, only the issue of the permanent loss of plaintiff's left leg *below the knee*. That was done, and the jury found that for a time, plaintiff suffered the loss of the use of his left leg below the knee, but that *it was not permanent*.[2]

The issue of total incapacity as a result of "general injuries" was also submitted to the jury, and there was a finding of total incapacity for a period of 208 weeks beginning on the day of the accident (March 6, 1941) and ending March 6, 1945.[3] There was a finding that the injury affected parts of his body other than his left leg below the knee,[4] and a finding that 95% of such total incapacity was produced by the injury to his left leg below the knee.[5]

Under these findings, the question is presented of whether judgment should go for plaintiff or defendant, and if for plaintiff, for how much. The applicable Texas cases are numerous, and not always reconcilable. In the case of Lumbermen's Reciprocal

---

[2] Question 6 and the answers are as follows:

"Question No. Six: (a) If you have found that Plaintiff, L. C. Mitchell, on or about March 6, 1941, at Camp Wallace, near Hitchcock, Texas, while in the employ of Wohlfeld-Dalton-Dellone, and in the course of such employment, sustained an injury, did Plaintiff, L. C. Mitchell, as a result of such injury, suffer the loss of the *use* of his left leg below the knee, or will he in all reasonable probability suffer the loss of the *use* of his left leg below the knee? Answer: Yes.

"(b) If so, find and give the date Plaintiff, L. C. Mitchell, suffered the loss of the *use* of his left leg below the knee, or when he will in all reasonable probability suffer the loss of the *use* of his left leg below the knee? Answer: March 6, 1941.

"(c) If so, has Plaintiff, L. C. Mitchell, regained the *use*, or will he in all reasonable probability regain the *use*, of his left leg below the knee? Answer: Yes.

"(d) If so, find and give the date he regained the *use*, or when he will in all reasonable probability regain the *use*, of his left leg below the knee? Answer: March 7, 1945."

[3] Question No. 2 and the answers are as follows:

"Question No. Two: (a) If you find that Plaintiff, L. C. Mitchell, sustained an injury on or about March 6, 1941, at Camp Wallace, near Hitchcock, Texas, while in the employ of Wohlfeld-Dalton-Dellone, and in the course of such employment, did he become or will he become totally incapacitated as a result of such injury? Answer: Yes.

"(b) If you answer that he did become or will become totally incapacitated, then

during how many weeks from and after March 6, 1941, has he been or will he be totally incapacitated? Answer: 208 weeks.

"(c) If you answer that he did become or will become totally incapacitated, and you have given the number of weeks which you have found he has been or will be totally incapacitated, then find and give the date or dates between which he has been and/or will be totally incapacitated? Answer: Beginning March 6, 1941, to March 6, 1945."

[4] Question No. 5 and the answer is as follows:

"Question No. Five: If you have found that Plaintiff, L. C. Mitchell, on or about March 6, 1941, at Camp Wallace, near Hitchcock, Texas, while in the employ of Wohlfeld-Dalton-Dellone, and in the course of such employment, sustained an injury, was same an injury to, or did such injury affect, any part of his body other than his left leg below the knee? Answer: Yes."

[5] Questions 4a and 4b, and the answers thereto, are as follows:

"Question No. Four: (a) If you have found that Plaintiff, L. C. Mitchell, did become or will become so totally incapacitated as a result of an injury sustained on or about March 6, 1941, at Camp Wallace, near Hitchcock, Texas, while in the employ of Wohlfeld-Dalton-Dellone, and in the course of such employment, do you find such total incapacity produced solely by the injury to his left leg below the knee? Answer: No.

"(b) If *not*, what percent of such total incapacity do you find produced by the injury to his left leg below the knee? Answer: 95%."

Association v. Anders,[6] Tex.Civ.App., Beaumont, 292 S.W. 265, 267, the facts and the findings of the jury were quite similar to the facts and findings here. It is there said (italics mine): "It is contended by able counsel for appellant that the foregoing evidence, as we have substantially stated it, showed clearly that the only injury received by appellee was the loss of the use of his right foot, and that under section 12 of article 8306, supra, he is confined to a recovery of compensation for a period of only 125 weeks, because under that section it is specifically provided that for the loss of a foot, or the use thereof, the compensation cannot be paid for a period greater than 125 weeks. We cannot agree with counsel for appellant in this contention, and think that section 12 of article 8306 does not govern the injury in this case. It is true that appellee has lost the use of his foot, *but it is not true that the loss of the use of that member is the only injury that appellee has received.* In consequence of the breaking of his leg and its failure to unite, and the constant pain and suffering that appellee has endured, and continues to endure, he has been rendered totally unable to perform manual labor, and it is probable, as we think, that this condition will continue unless appellee's leg is successfully amputated, thereby relieving him of the constant pain and suffering that he now endures in consequence of the condition of his leg. We know of no provision in the law that requires an employee to have his leg amputated in a case of this character, or otherwise be confined to a recovery of compensation as for the loss of the use of a specific member, as provided in section 12, supra. It is not only the loss

of the use of the foot that has resulted to appellee, but on account of the nature of the injury to his leg and the conditions that have set up in consequence of the injury, his pain and suffering is such that he cannot endure to perform manual labor, which, as the record shows, he is only qualified to perform."

In this view, the Court of Civil Appeals (260 S.W. 283) followed the Commission of Appeals in the well known case of Tex. Employers' Insurance Association v. Moreno (277 S.W. 84, 85).

Among other cases,[7] defendant relies upon Petroleum Casualty Co. v. Seale, Tex. Com.App., 13 S.W.2d 364, 365, 366. There the employee received an injury to his right foot, and the trial judge submitted issues generally under the law, but declined to submit issues under Section 12. This was held error, but the Court said (italics mine):

"We do not mean to hold that an employee who has received an injury to a specific member of the body is confined to a recovery of the compensation specially provided for such injury if *he is able to allege and prove other injuries or if it be fairly shown that the injury to the specific member has involved other portions of his body or affected his general health. Under such allegations and proof he may be entitled to have his injury compensated under the more liberal provisions of the act.*

"The rule laid down in this case follows our holding in Lumbermen's Reciprocal Ass'n v. Pollard, 10 S.W.2d 982 (not yet officially reported), and is not out of harmony with that declared in the Moreno case, Tex.Com.App., 277 S.W. 84, de-

---

[6] Other cases are: Texas Employers' Insurance Association v. Ray, Tex.Civ. App., 68 S.W.2d 290; New Amsterdam Casualty Company v. Morrison, 5 Cir., 36 F.2d 216; Zurich General Accident & Liability Insurance Company v. Daffern, 5 Cir., 81 F.2d 179; Texas Employers' Insurance Association v. White, Tex. Civ.App., 79 S.W.2d 911; Standard Accident Insurance Co. v. Williams, Tex. Com.App., 14 S.W.2d 1015; Traders & General Ins. Co. v. Huntsman, Tex.Civ. App., 125 S.W.2d 481; Ætna Life Ins. Co. v. Bulgier, Tex.Civ.App., 19 S.W.2d 821; Travelers Ins. Co. v. Mote, Tex.Civ. App., 116 S.W.2d 427.

[7] Other cases are: Lumbermen's Reciprocal Ass'n v. Pollard, Tex.Com.App., 10 S.W.2d 982; Texas Employers' Ins.

Ass'n v. Moreno, Tex.Com.App., 277 S. W. 84; Ætna Casualty & Surety Co. v. Wootton, Tex.Civ.App., 119 S.W.2d 165; Maryland Casualty Co. v. Donnelly, Tex. Civ.App., 50 S.W.2d 388; Texas Employers Ins. Ass'n v. Maledon, Tex.Com.App., 27 S.W.2d 151; Fidelity Union Casualty Co. v. Munday, Tex.Com.App., 44 S.W. 2d 926; Fireman's Fund Indemnity Co. v. Hopkins, Tex.Civ.App., 119 S.W.2d 394; Federal Underwriters Exchange v. Simpson, Tex.Civ.App., 137 S.W.2d 132, 133; Traders & General Ins. Co. v. Marrable, Tex.Civ.App., 126 S.W.2d 746; Standard Accident Ins. Co. v. Williams, Tex.Com.App., 14 S.W.2d 1015; Texas Employers Ins. Ass'n v. Pierson, Tex. Civ.App., 135 S.W.2d 550; Firemen's Fund Indemnity Company v. Hopkins, Tex.Civ.App., 119 S.W.2d 394.

cided by this Commission, as in that case, *in addition to the specific injury, it was alleged that Moreno's left shoulder was involved, and that the injury affected his respiratory organs, which caused him to be weakened, and affected his general nervous system.* The same doctrine was applied in Lumbermen's Reciprocal Ass'n v. Anders, Tex.Civ.App., 292 S.W. [265], 267. In that case, it was claimed that appellee should have been confined to a recovery for an injury to the foot. The pleadings alleged, and the proof showed, that, in addition to the injury to the foot, he sustained a broken leg, that the bones had failed to unite, and that by reason of all of such injuries he was prevented from performing manual labor. Under such circumstances it was properly held that he was not confined to a recovery⁹ for the specific injury to the foot."

Also in Federal Underwriters Exchange v. Simpson, Tex.Civ.App., 137 S.W.2d 132, 134, upon which defendant relies, it is said (italics mine): "The rule was laid down in Petroleum [Casualty] Co. v. Seale, Tex.Com.App., 13 S.W.2d 364, 365, approved by the Supreme Court, that where injury results to a particular member of the body, compensation for loss of which is specifically provided by the statute, liability of the insurer is limited to that amount, even though the loss of, or injury to, that particular member actually results in total permanent incapacity of the employee to labor. This holding has been frequently followed and applied. See Texas Employers' Ins. Ass'n v. Galloway, Tex.Civ. App., 40 S.W.2d 973; Texas Employers' Ins. Ass'n v. Neatherlin, Tex.Com.App., 48 S.W.2d 967; Consolidated Underwriters v. Wilson, Tex.Civ.App., 111 S.W. 2d 865; Traders & General Ins. Co. v. Marrable, Tex.Civ.App., 126 S.W.2d 746; 45 Tex.Jur., § 175, p. 607. *This rule, however, does not preclude an employee from recovery under the more liberal provisions of the Workmen's Compensation Law, if he allege and prove that the injury to the particular member additionally extended to and affected other portions of his body, or impaired his general health to such an extent as to totally and permanently incapacitate him.* See Seale and Neatherlin cases, supra; 45 Tex.Jur., § 178, p. 612; and numerous cases there cited."

Here, plaintiff alleged and proved, and the jury found, injury to plaintiff's body other than his left leg below the knee, and that the injury affected parts of his body other than his left leg below the knee (Question No. 5 and Answer). Also that his total incapacity was produced in part by injury to his body aside from the injury to his left leg below the knee (Questions 4a and 4b and Answers).

I conclude that plaintiff is entitled to judgment for the number of weeks of total incapacity found by the jury.

3. But defendant says that plaintiff's pleadings are not sufficient. I think they are,⁸ but if they are not, I think they may be amended under Rule 15.

---

⁸ Paragraphs III and IV of Plaintiff's Pleadings read:

"That as a direct result of Cross-Plaintiff being struck by an automobile in the manner heretofore related, he was rendered unconscious for several hours immediately following the accident and for several days thereafter remained semi-conscious and irrational. That he suffered compound comminuted fractures of the left tibia and the left fibula; that he sustained a comminuted fracture of the right humerus; a comminuted fracture of the right scapula; multiple lacerations, abrasions, contusions, bruises and sprains over practically the entire body; a severe concussion of the brain; severe bruises in the right shoulder, left hip, left abdominal region and the left side of the chest. That Cross-Plaintiff has suffered with severe pain in the lower region of his back ever since the date of his injury, and as a result of said injury, is suffering with secondary anemia. That the fractures to the right shoulder have caused the same to be deformed in appearance and have resulted in limitation of motion to such an extent that the same could not be used in carrying on the usual duties of a workman. That the bones in Cross-Plaintiff's left leg were crushed and splintered to such an extent that even at this time there is no bony union between the parts and Cross-Plaintiff is unable to walk upon the same or use the same in any way. That following the date of his injury, infection set up at the site of the broken bones in Cross-Plaintiff's left leg and persisted for several months following the date of said accident and injury to Cross-Plaintiff. That the injuries heretofore described are serious and permanent and have wholly prevented and disabled Cross-Plaintiff from doing any work of any kind whatever since the occurrence

Plaintiff's tendered amendment may be filed.

If plaintiff's pleadings are indefinite, it was the right of defendant to move for bill of particulars under Rule 12(e), which was not done.

■ 4. In addition to finding total incapacity, the jury found 50% partial incapacity for 193 weeks beginning at the end of the period of total incapacity (March 7, 1945) and ending November 21, 1948.[9] Also that such partial incapacity was produced solely by the injury to Plaintiff's left leg below the knee.[10] The jury also found that while plaintiff lost the use of his left leg below the knee on March 6, 1941, that such loss was not permanent, in that he will regain its use by March 7, 1945, the beginning of the period of partial incapacity. So that we have the finding that while plaintiff will have, after March 7, 1945, the use of his left leg below the knee, he will still be 50% partially incapacitated. Doubtless the jury believed that

while he may regain the *use* of his left leg, it will still be diseased, and not fully healed, and that he will, therefore, be 50% incapacitated.

We have, therefore, the question of whether plaintiff should have judgment for compensation for such partial incapacity, and if so, whether for 193 weeks, as found by the jury, or for 125 weeks, as provided by Section 12.

I think plaintiff is entitled to judgment for compensation for partial incapacity, but only for 125 weeks, as provided by Section 12. See cases hereinbefore cited (Note 7), particularly the case of Maryland Casualty Company v. Donnelly, Tex.Civ.App., 50 S.W.2d 388, 389, where the findings of the Jury were substantially similar to the findings here.

■ 5. Defendant complains about the form of the questions submitted to the jury, citing Texas cases.[11] The Texas cases seem to be in conflict on the point.[12] I am doubtful if the Texas cases are controlling

---

of the same up to the time of the filing of this petition, and his total disability is permanent.

"In the alternative, if Cross-Plaintiff be mistaken in his allegations to the effect that he is totally and permanently disabled as a result of the injuries described in Paragraph III of this counter-claim, then Cross-Plaintiff alleges that said injuries described herein have resulted in the total and permanent loss of use of his left leg."

[9] Question No. 3 and the answers are as follows:

"Question No. Three: (a) If you find that Plaintiff, L. C. Mitchell, sustained an injury on or about March 6, 1941, at Camp Wallace, near Hitchcock, Texas, while in the employ of Wohlfeld-Dalton-Dellone, and in the course of such employment, did he become or will he become partially incapacitated as a result of such injury? Answer: Yes.

"(b) If you answer that he did become or will become partially incapacitated, then during how many weeks from and after March 6, 1941, has he been or will he be partially incapacitated? Answer: 193 weeks.

"(c) If you answer that he did become or will become partially incapacitated, and you have given the number of weeks which you have found he has been or will be partially incapacitated, then find and give the date or dates between which he has been and/or will be partially in-

capacitated? Answer: From March 7, 1945, to November 21, 1948, inclusive.

"(d) If you have answered that he did or will become partially incapacitated, then give the percentage of his partial incapacity? Answer: 50%."

[10] Question 4(c) and the answer is as follows:

"(c) If you have found that Plaintiff, L. C. Mitchell, did become or will become partially incapacitated as a result of an injury sustained on or about March 6, 1941, at Camp Wallace, near Hitchcock, Texas, while in the employ of Wohlfeld-Dalton-Dellone, and in the course of such employment, do you find such partial incapacity produced solely by the injury to his left leg below the knee? Answer: Yes."

[11] Fidelity & Casualty Co. of New York v. Van Arsdale, Tex.Civ.App., 108 S.W.2d 550; Federal Underwriters Exchange v. Arnold, Tex.Civ.App., 127 S. W.2d 972; Swift & Co. v. McElroy, Tex. Civ.App., 126 S.W.2d 1040; Petroleum Casualty Co. v. Schooley, Tex.Civ.App., 131 S.W.2d 291; and Texas Underwriters Ins. Ass'n v. Pierson, Tex.Civ.App., 135 S.W.2d 550.

[12] Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W.2d 738, writ of error refused by Sup.Ct.; Southern Underwriters v. Kelly, Tex.Civ.App., 110 S.W.2d 153; Traders & General Insurance Co. v. Offield, Tex.Civ.App., 105 S. W.2d 359; Southern Underwriters v. Sanders, Tex.Civ.App., 110 S.W.2d 1258.

on this, a matter of procedure. But if they are, I think the questions are sufficient under the Texas cases. It seems clear that they are in compliance with Rule 49(a). See Maryland Casualty Co. v. Broadway, 5 Cir., 110 F.2d 357.

Judgment for plaintiff, as stated.